THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TERRELL WALTERS, Defendant-Appellant.

First District (2nd Division)   No. 77-1302

Opinion filed February 20, 1979.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After a jury trial defendant was convicted of murder and attempt armed robbery and sentenced to concurrent prison terms of 50 to 100 years for murder and 5 to 15 years for attempt armed robbery. Defendant appeals presenting the following issues for review: (1) whether defendant was convicted of attempt armed robbery beyond a reasonable doubt; (2) whether defendant was adequately informed of his right to the presence of appointed counsel during interrogation; (3) whether the trial court erred in denying defendant's motion in limine and in allowing defendant's statement to be read to the jury; (4) whether the trial court erred in giving an instruction defining the elements of murder in terms of felony-murder by the commission or attempt of armed robbery; and (5) whether the trial court erred in giving an instruction regarding confessions.

We affirm.

On April 7, 1974, at approximately 8 p.m., Willie Connolly[1] was shot and killed at 5100 South State in Chicago, Illinois. Defendant, Terrell Walters, was arrested on April 10, 1974, and charged with murder and armed robbery.

---

[1] The indictment and the State's brief refer to the deceased as "Willis Conway." The sister of the deceased testified at trial that the deceased's name was "Willie Connolly."

Prior to trial, defendant filed motions to quash his arrest and to suppress evidence and to suppress defendant's statements to police. The following testimony was adduced at the hearing on the motions: Police officer John Kennedy testified that on April 10, 1974, he was investigating a series of robberies and murders. Kennedy and his partner, Francis Kehoe, went to 4947 South Federal to search a laundry room on the 16th floor of that building for a weapon. Officer Kennedy testified that he saw defendant in the elevator and heard a girl refer to defendant as "Turtle." Kennedy was not actively seeking a person named "Turtle," but he knew that a person named "Turtle" was a member of a gang in the area. Kennedy and Kehoe told defendant they were investigating several murders in the area and they wanted to talk to him. Defendant denied any knowledge of the murders but expressed concern and agreed to help police. After Kennedy and Kehoe searched the laundry room to no avail, defendant went with them to their squad car. Defendant was not handcuffed or placed under arrest. As they were walking toward the car, Kennedy saw a group of men which dispersed as the officers approached. One man, Kenneth Ash, remained, and he agreed to accompany the officers to police headquarters at 51st and Wentworth.

Officer Kennedy testified that neither defendant nor Ash was handcuffed, and both sat in the back seat of the car. A pat down search of defendant was made before defendant entered the car. At the station defendant and Ash were placed in separate interview rooms on the second floor. Kennedy had a conversation with defendant, and defendant denied any knowledge of the murders. Defendant offered to speak with Ash and tell him to cooperate, but the officers declined the offer and told defendant he could wait for Ash if he wanted. The officers then had a conversation with Ash in which Ash denied any involvement in the murders but stated that he had knowledge of an incident at 5100 South State. Ash stated that on the day after the murder, defendant told Ash that he and another had killed a man in a "stickup." Ash further stated that defendant showed him a .357 magnum revolver that he kept in his belt. Kennedy then locked the door of the room in which defendant was sitting.

Officer Kennedy testified that after finishing the interview with Ash, the officers told defendant he was under arrest and advised him of his rights. Defendant stated that he understood his rights, and he again denied any knowledge of the murders. The officers brought Ash into the room, and Ash repeated what he had told the officers. Officer Kennedy testified that defendant then stated that he was present at the scene of the murder, and a statement was taken.

On cross-examination Officer Kennedy testified that prior to questioning, defendant was told he was a suspect and was advised of his

rights. After the initial conversation, the officers left defendant alone in the room with the door open; defendant was told he could leave, but he indicated he wanted to wait for Ash. After Ash gave a statement, defendant was placed under arrest and handcuffed. Officer Kennedy testified that he did not have a warrant for defendant's arrest and did not observe defendant committing any crime. Kennedy did not see anyone strike, threaten or abuse defendant.

Officer Francis Kehoe testified to substantially the same facts as Officer Kennedy, except that Officer Kehoe testified defendant was not told he was a suspect in the murders and robberies. The court denied the motions to quash the arrest and to suppress the statements.

Defendant also presented a motion in limine seeking to bar the State from introducing at trial those portions of defendant's statements which referred to crimes other than the offenses for which defendant was being tried. The court denied the motion.

The following evidence was adduced at trial: Larry Boswell (16 years old) testified that he had lived at the Robert Taylor Homes at 5100 South State for about 11 years, but that he was not living there at the time of the incident in question. On April 7, 1974, at approximately 8 p.m. he was at 5100 South State and he saw defendant and Vince Herbert. Boswell knew defendant and Herbert from school and around the neighborhood. Boswell made an in-court identification of defendant and stated that defendant was also known as "Turtle." While Boswell was talking to Herbert about a debt due him from Herbert, defendant walked over and stated, "Give him the stick." Boswell saw a person known as "Mr. Cat" coming from the parking lot and going toward the elevators. Herbert then took a gun from his coat and gave it to defendant. Boswell testified that defendant stated something to the effect that he was going to rob the man (Boswell could not remember the exact words). Boswell then saw defendant walk toward the man with the gun in his hand, and Boswell ran to the second floor by way of the stairs. Boswell heard one shot and then went to the sixth floor to see a friend and went home.

Boswell testified that he never went to the police because he was scared and did not want to get involved. The police came to his house on November 28, 1974, and they took him to the station. Boswell testified that he did not know defendant had been arrested.

Officer John Maciejewski testified that on April 7, 1974, at approximately 8 p.m. he was exiting the station at 51st and Wentworth when he heard a loud sound like a gunshot come from a building at 5100 South State. Officer Maciejewski went to the building and when he arrived a man came running, saying that someone had been shot. Officer Maciejewski observed a man lying near the elevator; he checked for vital signs but detected no signs of life. He then called for assistance, and a

wagon came and removed the body. Officer Maciejewski testified that a crowd gathered at the scene, and he talked to several people, but no one gave any descriptions of suspects. He did not see Larry Boswell at the scene, and no weapon was recovered.

Betty Hill testified that the deceased, Willie Connolly, was her brother and that his nickname was "Catman."

Officer John Kennedy testified to the facts leading to defendant's arrest. His testimony was substantially the same as that given at the pretrial hearing. Officer Kennedy further testified that defendant gave an oral statement as follows: Defendant and Lacey Herbert went to 5100 South State for the purpose of "sticking up" someone; when they got there, they saw an older man going toward the elevator; Herbert took out a .357 magnum revolver and walked toward the man, while defendant went to the end of the breezeway to see if any police were coming; defendant then heard a shot and saw Herbert running; he and Herbert went to Herbert's apartment at 4947 South Federal, and Herbert put the gun in a dresser drawer in the rear bedroom.

Officer Kennedy testified that after defendant gave an oral statement, a state's attorney was called to the station. Defendant was re-interviewed after the assistant state's attorney, Robin Auld, arrived. A court reporter was then called, and a written statement was taken in question and answer form in the presence of Auld, the court reporter, a youth officer and the officers. Defendant's mother arrived and was present during the second half of the statement. The statement was transcribed by the court reporter, typed and then signed by defendant. The complete statement was read to the jury. In the statement defendant gave information about three other robberies and murders in the area of 5100 South State. Defendant stated that on February 9, 1974, he was with two others, and they went to "stickup" someone; defendant acted as a "lookout" while the other two stopped a man and asked for money; defendant looked in the man's wallet and then gave it back; one of the other two then shot the man with a .32 revolver; defendant then went home. Defendant stated that on another occasion he met Lacey Herbert and Boswell, and they said they were going to "stickup" someone; defendant went along to 5322 South State and stayed in the breezeway while the others went to the elevator and held up a man; defendant was not acting as a "lookout," but if anyone came he would have told Herbert; Herbert shot the man with a .357 magnum revolver. Defendant stated that four days before the incident at 5100 South State, he saw Herbert and Herbert said he wanted to rob someone; defendant walked with Herbert on 51st Street, and then Herbert stopped a man at 5127 South Michigan; defendant was about eight feet away when Herbert shot the man; he and Herbert then went to 4847 South Federal where defendant lived; defendant had the gun for

about three hours after the shooting. In reference to the incident at 5100 South State defendant stated that he saw Herbert and Herbert said he was going to "stick up" someone; defendant was going that way so he went with Herbert; defendant saw an old man, Herbert went toward him with his gun, and defendant went toward the front of the building; defendant heard one shot and then ran home; the next day defendant saw Kenneth Ash and told him that Herbert shot the man at 5100 State; defendant had the gun after the shooting, but he did not show it to Ash.

Officer Kennedy further testified that after the statement was taken from defendant, he and three other investigators went to 4947 South Federal to locate Herbert. Herbert was not there, but they recovered a .357 magnum revolver from the dresser drawer in the rear bedroom. Officer Kennedy testified that at the station he put the revolver on a table with four other revolvers, and defendant identified the gun recovered as the one used by Herbert.

On cross-examination Officer Kennedy testified that the other robberies and murders occurred on February 9, 1974, March 22, 1974, and April 6, 1974. Officer Kennedy testified further that the state's attorney arrived three to four hours after defendant was taken into custody, that the court reporter arrived about one hour later, and that the written statement was taken six to seven hours after defendant was taken into custody. Herbert was arrested in November 1974, and that was the first time Kennedy learned that Boswell was present when the incident occurred.

It was stipulated that on April 8, 1974, Dr. Joseph Klapros, pathologist for Cook County Coroner, performed an autopsy on the body of Willis Connolly. Dr. Klapros observed one bullet wound of entry nature in the neck and one of exit nature at the base of the neck and concluded that the cause of death was a gunshot wound to the neck.

It was further stipulated that defendant was 18 years old at the time of trial.

Defendant testified that in April 1974 he lived in the Robert Taylor Homes at 4947 South Federal with his mother and father. He finished the ninth grade in school. Defendant testified that on April 11, 1974, at about 4 or 5 p.m. he was at 4947 South Federal, and he saw four police officers coming toward the building. They asked defendant if he knew anything about the murder, and defendant said he did not. Defendant went with the officers to the 16th floor, and the officers took his wallet, looked at it and then gave it back. The officers took defendant to the police station, put him in a room on the second floor and handcuffed him. Kenneth Ash was not with defendant in the car, but he saw Ash later at the station. The officers asked him about the robberies and murders and when defendant repeatedly denied he had any knowledge, the officers slapped him several

times on his head and the side of his face. The officers then repeated the facts of the murders so that defendant could memorize the facts and tell the state's attorney. The officers also told defendant which gun to choose. Defendant testified that the officers told defendant that if he signed the statement he could go home. Defendant never spoke to the state's attorney or his mother alone. Defendant testified that he did not tell anyone that the officers beat him, that he did not talk to the state's attorney before he came in with a court reporter, that Ash came into the interview room but did not say anything, and that he told police where Herbert lived but did not say where the gun was located. Defendant testified that he was not involved in any murders.

Robin Auld testified in rebuttal that on April 11, 1974, he was an assistant state's attorney and was summoned to the station at 51st and Wentworth at approximately 3 a.m. Auld spoke to Officer Kennedy and then interviewed defendant for about 30 minutes. Auld then called a court reporter and took a statement from defendant. Auld testified that in the oral conversation defendant indicated that he did not do the shooting but he had gone along and acted as a "lookout." However, in the written statement defendant attempted to exculpate himself by saying that on all four occasions he happened to be going in the same direction as the robbers. Auld testified that he observed no blood, bruises or cuts on defendant, and defendant never indicated that he was mistreated.

Officer John Kennedy testified in rebuttal that on April 10, 1974, he brought defendant and Ash to the station at the same time. Kennedy testified that no one slapped defendant, and that defendant did not first choose the wrong revolver.

Based upon the foregoing evidence, the jury found defendant guilty of murder and attempt armed robbery. Defendant was sentenced to concurrent prison terms of 50 to 100 years, with a mandatory five-year parole, for murder and 5 to 15 years, with a mandatory three-year parole, for attempt armed robbery.

## I.

Defendant initially contends that the State failed to prove him guilty of attempt armed robbery beyond a reasonable doubt. Defendant contends that the evidence failed to show that either defendant or his associate took a substantial step toward commission of the offense of armed robbery, and that the facts show only mere preparation to commit the offense.

■■ A person commits armed robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force and while armed with a dangerous weapon. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—1, 18—2.) In order to establish the

offense of attempt armed robbery, there must be an intent to commit the specific offense of armed robbery and an act which constitutes a substantial step toward commission of that offense. (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a).) Mere preparation to commit an offense does not constitute an attempt. (*People v. Elmore* (1971), 50 Ill. 2d 10, 276 N.E.2d 325.) However, the distinction between the preparation and the attempt is a matter of degree, depending upon the facts and circumstances of each case. (*People v. Wallace* (1974), 57 Ill. 2d 285, 312 N.E.2d 263.) It is not necessary to constitute an attempt that the last proximate act to the completion of the offense be done. *People v. Delk* (5th Dist. 1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197; *People v. Paluch* (2d Dist. 1966), 78 Ill. App. 2d 356, 222 N.E.2d 508.

Larry Boswell testified that defendant obtained a gun from Herbert, stated something about robbing a man walking toward the elevator and then approached the man with the gun drawn. Boswell then heard a gunshot. Based on Boswell's testimony, it was not unreasonable for the jury to conclude that defendant had the intent to rob the man and by arming himself and going toward the man, he took a substantial step toward commission of the offense. Defendant contends that intent may have been present during the preparation when defendant obtained the gun, but no intent was shown thereafter. However, it is well established that intent may be shown by circumstantial evidence and may be inferred from the acts of the accused. *People v. Murff* (1963), 29 Ill. 2d 303, 305, 194 N.E.2d 226; *People v. Cheatem* (1st Dist. 1976), 35 Ill. App. 3d 414, 416, 342 N.E.2d 410.

The testimony of Officer Kennedy and Robin Auld also support the finding of attempt armed robbery. Both testified that defendant initially told them that he met Herbert, that Herbert had a gun and stated he was going to rob someone, and that defendant went along and acted as a "lookout." It was not unreasonable for the jury to conclude that the requisite intent was present, and that the actions of Herbert and defendant went beyond mere preparation and constituted a substantial step toward commission of an armed robbery. This conclusion is supported by *People v. Delk* in which the court held there was sufficient evidence of attempt armed robbery where defendants entered a tavern while armed with guns.

■■ The law is well settled that the credibility of the witnesses and the weight to be given to their testimony is a question to be determined by the jury. (*Elmore,* at 13.) The court will not substitute its judgment for that of the jury unless the evidence is so palpably contrary to the verdict as to justify a reasonable doubt as to defendant's guilt. The record shows that there was sufficient credible evidence for the jury to find defendant guilty of attempt armed robbery beyond a reasonable doubt.

## II.

Defendant next contends that the trial court erred in failing to suppress his statements to police, and that the statements should have been suppressed because the warnings given to defendant by police were inadequate under *Miranda v. Arizona* (1966), 384 U.S. 436, 479, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

Officer Kennedy testified that he informed defendant of his *Miranda* rights as follows:

> "Referred him to the card that is on the wall, a list of rights, and further told him orally he had a right to remain silent, that anything he said could and would be used against him in a court of law; and that he had a right to an attorney and to have that attorney present with him before and have him present during any questioning; and if he could not afford an attorney one would be provided by the court.
>
> ⁕ ⁕ ⁕
>
> We asked him if he understood and he stated that he did ⁕ ⁕ ⁕."

Defendant contends that the warnings failed to adequately inform him of his right to the presence of appointed counsel during interrogation as required by *Miranda*. Defendant argues that use of the words "one would be provided by the court" led defendant to believe that he could not have an attorney appointed until he went to court.

■■ It is established that *Miranda* does not specify the precise language to be used in conveying the warnings and does not require a ritualistic recital of words. (*United States v. Lamia* (2d Cir. 1970), 429 F.2d 373, 375, *cert. denied* (1970), 400 U.S. 907, 27 L. Ed. 2d 146, 91 S. Ct. 150; *People v. Prim* (1972), 53 Ill. 2d 62, 67, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Words which convey the substance of the warnings along with the required information are sufficient. (429 F.2d 373, 375.) Several courts have held that warnings substantially the same as those given to defendant in the case at bar were adequate under *Miranda*. In *Lamia* defendant was told, among other rights, that he had the right to an attorney and if he was not able to afford an attorney, one would be appointed by the court. The court rejected the argument that the warning did not apprise defendant that he had the right to presence of counsel during questioning. Similarly in *United States ex rel. Placek v. Illinois* (7th Cir. 1976), 546 F.2d 1298, 1300, the court held that the warnings were sufficient where defendant was advised that "he had the right to remain silent; that anything he said could be used against him; that 'if he wanted an attorney present, he could have one' and that 'if he could not afford one, an attorney would be appointed through the Court for him.' " In *People v. Hoffman* (4th Dist. 1975), 32 Ill. App. 3d 785, 336 N.E.2d

209, the court held defendant was adequately informed of his right to an appointed attorney when he was told that the court would appoint one if he was indigent. See also *United States v. Noa* (9th Cir. 1971), 443 F.2d 144; *People v. Sims* (1st Dist. 1978), 58 Ill. App. 3d 668, 374 N.E.2d 1050.

Defendant cites as support *United States v. Garcia* (9th Cir. 1970), 431 F.2d 134; *United States ex rel. Williams v. Twomey* (7th Cir. 1972), 467 F.2d 1248, and *Sullins v. United States* (10th Cir. 1968), 389 F.2d 985. In *Garcia* defendant was told that she had a right to counsel during questioning, and that she had a right to have an attorney appointed "when you first appear before the U. S. Commissioner or the Court." (431 F.2d 134.) The court in *Garcia* held that the warnings were inconsistent and led defendant to believe that she could have counsel appointed only at some future time. In both *Twomey* and *Sullins* defendants were told they had a right to an attorney during questioning and that "one will be appointed for you, if you wish, if and when you go to court." (467 F.2d 1248, 1250; 389 F.2d 985, 988 n. 2.) The courts held that the warnings were misleading and conveyed the message that the person was first entitled to appointed counsel upon an appearance in court at some unknown future time.

The cases cited by defendant are distinguishable in that those cases involved warnings which were internally inconsistent and did not inform defendant that he had an absolute right to an attorney. The warnings indicated that an attorney could not be appointed until a later time, and they purported to take away in one sentence rights announced in another. (*United States ex rel. Placek v. Illinois.*) In the case at bar no qualification of defendant's rights was mentioned. Defendant was told he had a right to the presence of counsel during interrogation, and that he could have court-appointed counsel if he could not afford an attorney. Defendant was not told that counsel would not be appointed until some future time when defendant appeared in court. In *Prim* defendant was informed, among other rights, that if he did not have money for an attorney, the State would provide him with one. The court held that the warnings adequately informed defendant of his right to appointed counsel during interrogation, stating:

> "It would be a strained construction of the language used by the detective to say that it conveyed a meaning that an attorney would be furnished at some future time." (53 Ill. 2d 62, 67.)

Similarly, in the case at bar, it would be a "strained construction" to say that defendant was not adequately informed of his right to presence of appointed counsel during interrogation.

It may be noted that the written statement signed by defendant contains a recital of the rights which were read to defendant prior to questioning by the state's attorney. The statement reads in pertinent part:

"Q Were you advised that you had a right to have an attorney present?

A Yes.

Q And you understood that?

A Yes.

Q Were you also informed that if you cannot afford an attorney one will be provided for you?

A Yes.

*  *  *

Q You know that you have a right to an attorney present and that if you cannot afford one one will be provided for you, you understand that?

A Yes.

Q You understand that at any time during the questioning you can stop. If you wish to stop you can say so?

A Yes."

The record shows that the warnings given to defendant were adequate under *Miranda* and the court did not err in failing to suppress the statements made by defendant to police.

### III.

Defendant next contends that the trial court erred in denying his motion in limine and in allowing defendant's complete statement to be read to the jury. Defendant contends that the references to crimes other than the ones which are the subject of this appeal should have been deleted from the statement. The State contends that the trial court did not err because defendant's statements regarding other murders and armed robberies were evidence of defendant's guilty knowledge, intent and a common design.

■ As a general rule, evidence of other crimes is not admissible as proof of guilt for the offense charged. (*People v. Gonzales* (1st Dist. 1978), 60 Ill. App. 3d 980, 991, 377 N.E.2d 91; *People v. Osborn* (1st Dist. 1977), 53 Ill. App. 3d 312, 320, 368 N.E.2d 608.) However, exceptions to the general rule have been established. The supreme court stated in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489:

"It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the

commission of a separate offense. [Citations.] In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. [Citations.]"

Evidence of other crimes which shows a common scheme or design is admissible. (*People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532; *People v. Oliver* (1st Dist. 1977), 50 Ill. App. 3d 665, 365 N.E.2d 618.) Although it must be shown that a crime occurred and the accused committed it or participated in its commission (*People v. Smith* (1st Dist. 1976), 37 Ill. App. 3d 1016, 347 N.E.2d 257), proof of other crimes need not be beyond a reasonable doubt. *People v. Miller* (1st Dist. 1977), 55 Ill. App. 3d 421, 426, 370 N.E.2d 1155, *appeal denied* (1977), 66 Ill. 2d 634.

Officer Kennedy testified that he and several other investigators were assigned to investigate robberies and murders which occurred on February 9, 1974, March 22, 1974, April 6, 1974, and the incident in question which occurred on April 7, 1974. Defendant's oral and written statements to police indicated that three robberies and murders occurred in the area of 5100 South State prior to the incident in question and that he went along on each incident. On two occasions he accompanied Lacey Herbert as he did during the offense charged. In each incident a handgun was used and the purpose was to rob the victim. Defendant stated that during the incident on February 9, 1974, he acted as a "lookout" and that during another incident he stayed in the breezeway while Herbert went to the elevator and held up a man, which is similar to what occurred during commission of the offense charged. Defendant initially told police that on April 7, 1974, he stayed in the breezeway and acted as a "lookout" while Herbert robbed a man. After the incident on April 6, 1974, and after the incident in question here, defendant kept the gun which belonged to Herbert for about three hours after commission of the crime.

The evidence was sufficient to show that the prior crimes occurred and that defendant participated in the commission of them. The record indicates that the evidence of prior crimes was admitted for the limited purpose of showing a common scheme or design. There were sufficient similarities in the perpetration of the crimes and the mode of operation to warrant introduction of the evidence of the other offenses. In *People v. Nelson* (1st Dist. 1974), 17 Ill. App. 3d 224, 308 N.E.2d 122, *appeal denied* (1974), 56 Ill. 2d 584, evidence of an alleged armed robbery occurring four days after the armed robbery in question was admissible to show a common design. In both incidents the victims were women alone at night, who were accosted while about to enter their homes, and the attacker held a gun to the victims' heads and demanded their keys. In *Gonzales* evidence of defendant's attacks on other young women was admissible in

his trial for rape to show a common scheme or design. The court found sufficient similarities in that three attacks occurred in the same general area, within a five-month period of time, and in each the attacker stated he was a police officer or that the victim was under arrest.

▆ It is true that even where evidence of other crimes is relevant, the probative value of such evidence must be weighed against its prejudicial impact, and where the latter outweighs the former, the evidence should be excluded. (*Gonzales*, at 993.) However, this decision is left to the sound discretion of the trial court. In view of the similarities among the incidents, it cannot be said that the trial court in the case at bar abused its discretion. It should be noted that the jury was instructed that the evidence of other crimes was received solely on the issue of defendant's presence, intent, motive, design and knowledge and was to be considered only for the limited purpose for which it was received. Thus, the evidence was not to be considered as proof that defendant had a propensity toward criminal conduct, and the court did not err in denying defendant's motion in limine.

## IV.

Defendant next contends that the trial court erred in giving a jury instruction defining the elements of murder in terms of felony-murder by the commission or attempt of armed robbery. Defendant contends that the reference to armed robbery was erroneous because the evidence did not prove defendant guilty of attempt armed robbery beyond a reasonable doubt. The record indicates that defendant objected to the instruction on the ground that it included a reference to the theory of accountability. Defendant did not object on the ground urged on appeal and did not specify any basis for objection in his motion for new trial. It is established that a party waives an objection to an instruction if he does not specify the basis for the objection. (*People v. Turner* (1st Dist. 1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.) Thus, defendant waived this issue for purposes of appeal. However, a reviewing court may determine an issue if the interests of justice require it. Ill. Rev. Stat. 1975, ch. 110A, par. 451(c).

It is established that a reviewing court does not weigh the evidence upon a question of whether an instruction was proper. (*People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726.) An instruction must be supported by some evidence but not necessarily undisputed evidence. (*People v. Thomas* (1st Dist. 1977), 49 Ill. App. 3d 961, 364 N.E.2d 641.) Even slight evidence upon a given theory of the case will justify giving an instruction. *Kalpak*; *People v. Addison* (1st Dist. 1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025; *People v. Clifford* (1st Dist. 1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.

The record indicates that the instruction was supported by the evidence. The testimony of Larry Boswell and defendant's own statements indicate that defendant was involved in the commission of an attempt armed robbery. Thus, the felony-murder instruction was proper.

## V.

Finally, defendant contends that the trial court erred in giving a jury instruction regarding confessions. Defendant failed to object to the instruction at trial and failed to specify the basis for his objection in his motion for new trial. Since a failure to object to an instruction operates as a waiver (*People v. Springs* (1972), 51 Ill. 2d 418, 424, 283 N.E.2d 225), defendant has waived this argument for purposes of appeal. The reviewing court may, in the interests of justice, examine the issue under Supreme Court Rule 451(c). Ill. Rev. Stat. 1975, ch. 110A, par. 451(c).

A confession is a direct acknowledgment of guilt on the part of the accused either by a statement of details of the crime or an admission of ultimate fact. (*People v. Sleezer* (1956), 9 Ill. 2d 57, 136 N.E.2d 808.) An admission is a statement of independent facts which, when taken in connection with proof of other facts, may lead to an inference of guilt of the crime charged, but from which guilt does not necessarily follow. (*People v. Kurzydlo* (1st Dist. 1974), 23 Ill. App. 3d 791, 320 N.E.2d 80, *appeal denied* (1975), 58 Ill. 2d 594.) In *People v. Ellis* (4th Dist. 1975), 31 Ill. App. 3d 666, 335 N.E.2d 23, the court held that defendant's statements that he was at the scene of the burglary but acted only as a lookout and that he tried to hide his involvement from police, amounted to a voluntary declaration of defendant's participation in the crime and thus constituted a confession. In *People v. Rollins* (4th Dist. 1970), 119 Ill. App. 2d 116, 255 N.E.2d 471, the court found that defendant's statement that he stood by while others entered a house and removed a television constituted a confession. The court in *Rollins* stated at pages 131-32:

> "[O]ne can stand off in the wings, as it were, and yet be held accountable for the action center stage. What [defendant] told the police was indeed a confession as we have just defined it. There is a reasonable inference from what he told the police officer that he committed the crime with which he was charged. * * * The facts he recounted to the police reasonably and directly implied guilt, hence the characterization [of the statement as a confession] was proper."

In the case at bar Officer Kennedy and Mr. Auld testified that defendant told them he went with Herbert and acted as a lookout while Herbert robbed the man near the elevator. This statement amounts to a declaration of defendant's involvement in the crime and directly implies

guilt. Thus, the oral statements constituted a confession by defendant, and the instruction was proper.

■■ The written statement by defendant is less clear. The following is a portion of the statement:

> "A He [Lacey Herbert] was going to stick somebody up and I was going that way so I went with.
>
> Q Were you going to act as a lookout?
>
> A Well, I was there.
>
> \* \* \*
>
> Q Why did you go to the front of the building?
>
> A I was going back around to talk to—to watch out, I didn't want Lacey to shoot me too."

Although defendant did not specifically state that he acted as a lookout, his statement reasonably infers that he participated in commission of the offense. Defendant admitted that he knew Herbert's intentions, and he voluntarily accompanied Herbert. It was not improper for the trial court to characterize defendant's statement as a confession and to give the jury instruction regarding confessions.

Based on the foregoing we affirm the judgment of the circuit court of Cook County.

Affirmed.

DOWNING and HARTMAN, JJ., concur.