THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL HOUSETON, Defendant-Appellant.

First District (5th Division)   No. 84—0454

Opinion filed March 14, 1986.—Modified on denial of rehearing April 18, 1986.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Karen C. Wirth, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant Michael Houseton was convicted of armed robbery and deviate sexual assault. Upon considering factors of mitigation and aggravation, the trial court sentenced defendant to 60 years' imprisonment for each offense; the sentences to run concurrently. On appeal, defendant has asserted errors in the trial court's rulings on the reception of evidence and the length of sentence.

We affirm.

On the evening of February 11, 1982, 23-year-old Donna B. was robbed at gunpoint and sexually assaulted in an elevator located in the victim's Chicago Housing Authority (CHA) apartment complex. The incident occurred at approximately 9 p.m. as Donna rode in the building's elevator *en route* to her 12th floor apartment. At the onset of the attack, the assailant stopped the elevator by disconnecting its alarm system, pointed a gun at Donna and ordered her to turn her face against the wall. After the assailant searched Donna's purse and

clothing, including her bra, and took her money, he ordered the victim to the floor of the elevator, where her coat lay and anally raped her. After the attack was over, the assailant ordered Donna to remain in the elevator until he had escaped. The assailant thereafter reactivated the elevator and ran off.

After reaching her apartment, Donna notified the police and told them what had happened. She was later taken to Michael Reese Hospital, where it was determined that she had suffered a laceration to the external part of the anal sphincter as a result of trauma to the rectal area.

During the investigation that followed, Donna described the assailant to police as being a black male, approximately 20 to 25 years of age, between 5 feet 2 inches and 5 feet 4 inches tall and weighing 155 to 165. She also indicated that this individual had a stocky build, medium complexion and wore a blue nylon parka-type jacket with fur trim hood at the time of the attack. According to Donna the gun used by her assailant in the attack was small with a silver streak on it. Donna testified that she was aware of these details both because she had the opportunity to look at her assailant under the lights in the lobby while waiting for the elevator, and because she continued to look at him over her shoulder at the onset of the attack in the well-lit elevator before the attacker covered his face with a ski cap.

In late February of 1982, shortly after the assault took place, Donna viewed a police lineup but failed to see her attacker in it. A subsequent lineup conducted in March 1982 brought the same negative results. It was not until April 10, 1982, that Donna positively identified her assailant in one of six photographs shown to her by detectives. The individual picked by Donna as the man who had robbed and sexually assaulted her was later identified as Michael Houseton, defendant in this case. Shortly thereafter, defendant was arrested, charged with armed robbery and deviate sexual assault.

On April 13, 1982, the morning after being taken into custody for the crimes charged, defendant was interviewed by Detectives John Markham and Michael O'Connor of the Chicago police department. Nobody else was present at the meeting. According to Markham, after defendant was informed of his *Miranda* rights, his attention was directed to the incident involving Donna. At defendant's trial, the State offered as evidence against defendant some of the statements allegedly made by defendant during this interview. Defendant moved to preclude the State from introducing the statements in a pretrial motion and a motion *in limine*, but both were denied.

Thereafter, Markham testified that defendant told them during

the interrogation that in February 1982 he had been at Donna's apartment complex to purchase some "reefer" on the 12th floor. While using the stairwell leading down from the 12th floor, he encountered a woman who acted startled and told him that she had no money and not to hurt her. Defendant then related that he did not know whether he should rape, rob or beat the woman. The woman supposedly emptied her pockets and defendant searched her person. She then began to scream and said, "John, don't do this to me." Defendant further told detectives that he was with a friend by the name of "22 Short" at the time. He also revealed that he had anal sex with the woman and "22 Short" had oral sex with her. Defendant, however, argued that because he did not have "sexual" [vaginal] intercourse with the woman, he could not be charged with rape.

Defendant denied having attacked Donna, testifying that on the evening in question he was at his girl friend's home. His alibi was corroborated by the testimony of his girl friend, her friend, and two of his girl friend's children. Defendant also denied telling Detectives Markham and O'Connor that he had been at Donna's apartment complex on that date.

The State also introduced the testimony of L.B., a rape victim, who was allegedly attacked in a separate incident by defendant. Prior to trial, defendant had filed a motion *in limine* to have L.B.'s testimony excluded. Upon the court's denial, defendant renewed his motion during trial, but it was again denied.

L.B., a 51-year-old mother of five, testified that she was the victim of a robbery and rape on February 23, 1982, at approximately 5 p.m. in a CHA apartment complex elevator. As in Donna's case, her assailant hit the elevator's emergency button, causing it to stop. He then pointed a gun at her and warned her not to scream. After pulling a cap over L.B.'s head, the assailant pushed the victim's face against the wall. He next searched L.B.'s pockets and bra, taking her money, keys and bus pass. After pulling off her coat, girdle and boots, the assailant ordered L.B. to spread her coat on the floor of the elevator and lie on it. He unzipped his pants and forced himself on her, inserting his penis in her vagina. After the attack was over, the assailant told L.B. not to move until he had exited the elevator. The victim ran home after he was gone and notified the police.

L.B. described her assailant to police as being a black male, 5 feet 4 inches tall and between 140 and 150 pounds. She later testified that he had a light complexion, medium build and wore a green army jacket and blue knit cap at the time of the attack. She further described the man's gun as being small with a white handle. During her

testimony at defendant's trial, L.B. positively identified defendant as the man who had attacked her on the elevator.

After hearing all the evidence and upon deliberation, the jury found defendant guilty of deviate sexual assault and armed robbery against Donna. Defendant thereafter moved for a new trial, but his motion was denied.

On February 16, 1984, defendant was sentenced to 60 years imprisonment on each of his convictions; the sentences to run concurrently. Upon considering numerous factors of mitigation and aggravation the trial court determined that defendant was "a menace to society."

The presentence investigation report disclosed that in 1978 defendant was convicted twice for armed robbery and twice for rape. After serving time in the penitentiary for those crimes, defendant was released. Aside from filing with the trial court certified copies of defendant's prior convictions during the aggravation portion of the sentence hearing, the State presented to the judge for consideration, over defendant's objections, pen letters (prosecutors' letters to penal authorities) indicating that defendant's prior convictions similarly involved sexual assaults to women on CHA elevators. Those letters were not made part of the record on appeal.

Defendant appeals his conviction and sentence.

OPINION

Defendant initially contends that the State improperly presented to the jury evidence of other crimes allegedly involving him as a means of persuading jurors that defendant was a man of criminal tendencies.

The first such presentation of proof of other crimes occurred during the testimony of L.B. According to defendant, the trial court committed reversible error in admitting L.B.'s testimony because the two crimes were not sufficiently similar to earmark the crimes as the exclusive work of defendant. Defendant further contends that the prejudicial effect of L.B.'s testimony outweighed its probative value because the identity of the attacker was adequately before the jury through the testimony of complainant Donna.

At issue is whether the occurrences in question share sufficient distinctive characteristics to qualify under the *modus operandi* exception.

■ It is well established that evidence of other crimes is admissible, among other things, to show *modus operandi*, provided its probative value and need outweigh its prejudicial effect. (*People v. Lieber-*

*man* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516.) The *modus operandi* exception to the general rule against admissibility has been recognized as circumstantial evidence of identity, since crimes committed in a similar manner suggest a common author. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074.) While two crimes need not be identical for *modus operandi* purposes, they generally should share highly distinctive characteristics. Even if it is found that these common features are insufficient to raise the *modus operandi* inference individually, they may still yield a distinctive combination if considered together. *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074; see also *People v. Hooker* (1981), 96 Ill. App. 3d 127, 421 N.E.2d 301.

While not identical, the crimes committed against L.B. and Donna shared strikingly similar characteristics. Both women were attacked on CHA elevators. Defendant in both cases stopped the elevators in transit as a means of keeping his victims from escaping. Defendant searched both women and their clothing, including their bras, for money. Defendant robbed and sexually assaulted both victims at gunpoint. He further warned both women not to scream and ordered them to turn their faces to the wall. Defendant attempted to hide his identity in both situations by pulling his cap over his head in one case, and the victim's cap over her face in the other. Both women were told to lie on the floor on top of their coats. Defendant on each occasion told the victims to remain in the elevator until he disappeared. Only 12 days transpired between the two attacks while the victims themselves lived a mere three blocks away from each other. Of further significance is the fact that both women gave coinciding descriptions of their attacker. Defendant was described as a young, black male standing approximately 5 feet 4 inches tall and weighing between 150 to 160 pounds. Both also described defendant's gun as small with a white handle. Finally, each victim identified defendant in court as the man who had attacked her.

■■ We agree with the State that even if these common features are deemed insufficient to raise the *modus operandi* inference individually, they yield a distinctive combination when considered as a whole. Furthermore, where the State has positive identification evidence, it is not precluded from proffering additional evidence that is based on other alleged crimes. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074.) To the extent that evidence of other crimes strengthens the identification of a defendant, it is fulfilling its purpose under the principle of *modus operandi*. This has been held to be especially true where the identity of a defendant is a central issue in a case.

■ Defendant's identity was clearly an issue in this case. A defendant's identity is in issue where a defendant attempts on cross-examination to discredit a complainant's ability to identify or where a defendant presents an alibi defense. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Here, not only did defendant attempt on cross-examination to discredit Donna's identification abilities by pointing out that her initial conversation with her assailant lasted a mere minute and a half, and that the assailant had his face masked during the actual assault, but defendant also presented an alibi defense that he was in his girl friend's home the date of Donna's attack. We therefore reject defendant's contention that the identification of him by the complainant adequately placed before the jury the issue of defendant's guilt, thereby making proof of the other crime unnecessary.

■ Moreover, the decision to admit or exclude such evidence is within the sound discretion of the trial court. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Here, the trial court entertained lengthy arguments on defendant's motion *in limine* to have the evidence excluded and after weighing the merits decided to admit it. The court determined that the only difference between the two crimes was in the manner in which the two women were raped. Whereas L.B. was raped vaginally, Donna was sexually assaulted anally. The trial court correctly found this to not be a substantial difference.

We therefore conclude that L.B.'s testimony was properly admitted under the *modus operandi* principle and was of probative value to strengthen Donna's identification of the defendant in the instant case.

Additional evidence was submitted by Detective Markham when the trial court permitted him to present to the jury defendant's account of the crime he admitted committing. As a second basis for demanding retrial defendant contends that the State improperly presented his statements of a crime which, failing to match the details involved, was neither a competent confession of the crime charged and was not admissible as an admission of the crime alleged. Defendant also contends this testimony impermissibly informed the jury of other criminal conduct involving him. The State contends the statements were properly presented as admissions which, when taken in connection with proof of other facts, established an inference of guilt of the charges herein which the jury was permitted to accept or reject.

■ An admission is a statement of independent facts which, when taken in connection with proof of other facts, may lead to an

inference of guilt of the crime charged, but from which guilt does not necessarily follow. (*People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.) A confession, in contrast, is a direct acknowledgement of guilt on the part of the accused either by a statement of details of the crime or an admission of ultimate fact. (*People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.) Although a statement or declaration by a defendant may not be sufficiently comprehensive to constitute a confession, it may still be an admission. *People v. Gamble* (1976), 41 Ill. App. 3d 394, 353 N.E.2d 136.

It has been consistently held that even exculpatory statements may lead to an inference of guilt and qualify as an admission. (*People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605.) Also a defendant's false exculpatory statement has independent probative value as evidence of consciousness of guilt and is admissible. *People v. Watson* (1982), 103 Ill. App. 3d 992, 431 N.E.2d 1350.

■ Here, detectives directed defendant's attention to the incident involving Donna while interviewing him after his arrest. Defendant, subsequent to being warned of his *Miranda* rights, admitted to having been at Donna's apartment complex in February 1982, the month the attack took place. Defendant further told the detectives that he had anally raped a female at that time. Defendant's revelations, while not a confession since they did not constitute a direct acknowledgement of guilt 'of the specific crimes charged, were nonetheless admissions and usable against him as such. Moreover, even though defendant made no mention of the specific day in February when the aforementioned admitted incidents had transpired, a direct linkage to the day of Donna's attack can be inferred since those statements were made in response to Detective Markham's question "about an incident that occurred in February, 1982 at the CHA Building at 706 E. 39th Street ***."

Defendant additionally tried to exculpate himself from the offenses charged by revealing to the detectives that the sexual assault for which he took responsibility occurred in the stairwell, rather than in the elevator and by stating the assault did not involve vaginal penetration, a fact he thought barred a rape charge. Defendant's statements in this case clearly had probative value as evidence of consciousness of guilt. We therefore agree with the State that defendant's statements to the detectives were properly received in evidence as admissions to the crimes for which defendant was being tried.

Defendant additionally challenges the propriety of his sentence. The record reflects that the State called the court's attention to cer-

tain pen letters which showed that defendant's prior criminal convictions involved attacks on women riding CHA elevators. Defendant claims that the trial judge improperly accepted, over defendant's objections, these letters for use in aggravation at the sentence hearing. He alleges this was improper because the State, in not offering the authors of the letters as witnesses or any other witnesses or means by which to assure the judge that the contents of those letters were in fact true, failed to establish that the documents were reliable. Moreover, defendant asserts, the judge's adverse ruling following his objection to the acceptance of said documents, along with his remarks in setting sentence that defendant was a "menace to society" who deserved to be behind bars, showed that the court improperly relied on the pen letters in imposing defendant's sentence.

■ Discussing the duty assumed by the trial judge in determining a defendant's punishment, our supreme court in *People v. Devin* (1982), 93 Ill. 2d 326, 347, 444 N.E. 2d 102, 112, stated that a judge "must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence" (quoting *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451). However, it is abundantly clear from both the decisions of the supreme and appellate courts that reliance on an improper factor in aggravation does not always necessitate remandment for resentencing. Where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. *People v. Bourke* (1983), 96 Ill. 2d 327, 449 N.E.2d 1338; *People v. Davis* (1984), 124 Ill. App. 3d 813, 464 N.E.2d 1150; *People v. Reid* (1983), 94 Ill. 2d 88, 445 N.E.2d 329.

■ While the trial court's decision to overrule defendant's objection to the State's presentation of the pen letters is itself an indication that the trial judge believed the evidence to be proper, the record here does not demonstrate that the weight placed on these documents was so great as to have a significant impact on the sentence ultimately imposed on defendant. Although the court erred in accepting evidence which the State failed to show to be accurate and reliable (see *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248), the trial court reached its sentencing decision not because defendant's prior criminal convictions involved attacks on women riding CHA elevators, but because the evidence, other than that shown exclusively in the pen letters, showed that defendant's history of criminality was extensive. This evidence was gleaned from the presentence investigation report which disclosed that defendant had been previously convicted

twice for armed robbery and twice for rape. Thus, even though the trial judge might have considered the details of the crimes disclosed in the pen letters in passing, it is clear from the transcript of the sentence hearing that the primary factor in the trial court's sentencing determination was defendant's prior convictions. Furthermore, our reading of the record indicates that the trial court's comment that defendant was a "menace to society" was a response to the fact that, even after completing prior penitentiary sentences, defendant reverted to raping and robbing again. We therefore reject defendant's contention that the trial court abused its discretion in sentencing him to concurrent terms of 60 years for each offense.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P.J., and MURRAY, J.,* concur.

---

*Justice Murray was assigned to consider the petition for rehearing and concurs in the opinion as modified and denial of the petition for rehearing. Original opinion was concurred in by Presiding Justice James J. Mejda prior to his retirement on November 30, 1985.