THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE CHEW, Defendant-Appellant.

First District (2nd Division)   No. 62466

Opinion filed January 25, 1977.

James R. Streicker and Ira A. Moltz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Defendant, Lawrence Chew, was indicted and tried for the murder of his uncle, Nelson Chew. After a jury trial he was found guilty of involuntary manslaughter and sentenced to three to nine years.

On appeal defendant contends that there was insufficient evidence of reckless conduct to warrant the conviction of involuntary manslaughter; that certain cross-examination and rebuttal testimony was prejudicial; and that his sentence was excessive.

Defendant, who was 18 years old at the time of the incident, August 10, 1973, had been living at 8816 South Laflin, the home of his aunt, Ophelia Griffis, for about three weeks. Nelson Chew, 47, Mrs. Griffis' brother, had been living in the three-bedroom cottage for about 2½ years. It is undisputed that Nelson Chew and defendant were on friendly terms and frequently drank together.

That Friday evening, Mrs. Griffis testified that she left her home about

8:20 p.m., to go to church and that before leaving she checked to see that Nelson's shotgun which was kept in the closet in her bedroom was still there. She locked the closet door and took the key with her.

Defendant testified that he left his parents' home at 9212 S. Racine about 6:30 p.m., and he arrived at his aunt's house around 7:30 p.m. He had no key for the door so his uncle, Nelson Chew, admitted him. He noticed that his uncle's eyes were red and that he smelled of alcohol. Mrs. Griffis had already left for church when he arrived. He and Nelson Chew sat down at the kitchen table and were drinking and talking about the family. Nelson drank about a quart of wine and defendant drank a six-pack of malt liquor. Defendant testified that they were not arguing, that he loved his uncle, and that they always got along very well together. Defendant and his uncle drank together frequently.

Defendant testified that around 10:30 p.m., after they had been sitting at the kitchen table for sometime, Nelson Chew went into Mrs. Griffis' room and got the shotgun. Nelson pointed it at defendant who said, "Don't do that because I am afraid." Defendant grabbed the barrel of the shotgun and managed to wrest it away from Nelson. A struggle ensued. Nelson attempted to pull the gun away from defendant and the gun discharged. At trial the pathologist testified that Nelson Chew was hit in the right lateral chest.

When asked why the gun went off defendant testified, "I guess my finger was on the trigger." Nelson walked into the back bedroom which adjoined the kitchen and lay down on the bed. Defendant followed him into the bedroom putting the gun on a chair near the bed. Defendant testified that he was in shock and went to the phone to call the police to tell them a man had been shot. When he returned to the bedroom his uncle had rolled off the bed and onto the floor. When the police arrived he was waiting for them in the back of the house. He testified repeatedly that he told the police the shooting was an accident.

Officer John McKenna testified that he was the first officer tn the scene and that he and two fellow police officers had been informed over the police radio at about 10:40 p.m., that a man had been shot at 8816 S. Laflin in Chicago. When they arrived at that address they entered through the front door which was open and proceeded toward the back of the house where he saw defendant emerging from the back bedroom into the kitchen. There were fresh bloodstains on the kitchen floor and there was a man on the floor in the bedroom who was bleeding. He asked defendant what had happened and defendant answered, "I shot him." Defendant was then handcuffed and placed under arrest. Before leaving the house defendant asked if he could have his cigarettes. Officer McKenna observed the cigarettes on a counter in the bathroom and saw a key on top of the cigarettes. He did not touch the key or cigarettes at that time. It was later ascertained that this key would open the closet door where the

shotgun had been kept. Nelson Chew was taken by ambulance to Little Company of Mary Hospital where he died a short time later.

Mrs. Ophelia Griffis testified that when she left her house at approximately 8:20 that evening Nelson Chew was the only person home. When she returned home around 11 p.m., she saw police officers in the house and spoke to them. One of the officers had a key which he used to open her closet door. Until that time she thought she had the only key. Mrs. Griffis testified that Nelson and defendant got along well; that Nelson drank alcoholic beverages whenever he could get them and that he and defendant frequently drank together. It was later stipulated that Nelson Chew's blood contained a high percentage of alcohol.

Officer Hugh O'Hagan testified that he spoke to defendant that evening in the police station. After informing defendant of his rights he asked defendant what had happened. Defendant told Officer O'Hagan that he and his uncle were alone in the house, that they were having an argument, that Nelson Chew left and came back a short time later carrying a shotgun, that defendant pulled the gun away from his uncle and the gun went off. Officer O'Hagan stated that he told defendant if that is what happened, he, defendant, would have been injured, not his uncle. Thereupon defendant stated that the gun went off when he grabbed the gun from his uncle. At one point defendant said his uncle's finger was on the trigger and subsequently stated that his own finger was on the trigger. Officer O'Hagan never asked if the incident was an accident. He did not detect an odor of alcohol on defendant's breath.

Edward Chew, defendant's brother, testified that defendant and Nelson Chew had a good relationship; they appeared to be the best of friends; Nelson would help defendant in every way he could. He had seen both Nelson and defendant drink alcoholic beverages.

Defendant first argues that there was no evidence of reckless conduct by the defendant upon which to base a conviction for involuntary manslaughter. The involuntary manslaughter instruction was given at defendant's request.

Involuntary manslaughter is defined in the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—3(a)) as follows:

> "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.
> ❊ ❊ ❊ ."

Section 4—6 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 4—6) states:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances

exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

In the instant case defendant was the only person to testify as to what took place at the time of the shooting. He testified that he and his uncle were sitting at the kitchen table drinking intoxicating beverages and talking about the family; that his uncle went to another room and came back with his shotgun which he pointed at defendant. He said his uncle was holding the shotgun; that he was afraid of the gun; and that he struggled to get the shotgun away from his uncle. The uncle then attempted to regain possession of the gun and at this point the shotgun discharged hitting the uncle in the chest and causing the wound which was later determined to be the cause of death. Defendant testified that he did not know at first whether the gun was loaded or not, but also that he was afraid when his uncle pointed the gun at him. The evidence shows that both men had consumed alcoholic beverages immediately prior to the shooting; that the defendant and his uncle appeared to be on friendly terms with each other; but defendant also told Officer O'Hagan that they had been having an argument. The testimony of the defendant also indicates that at the time the shot was fired he had possession of the weapon, that it was pointed at his uncle, and that his finger was on the trigger when the shot was fired.

■■■ While these facts, if believed, may be insufficient to support a conviction for murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1), the jury could have inferred that the defendant's careless disregard for his uncle's safety while handling the gun and while possibly under the influence of alcohol was so reckless as to constitute a deviation from the standard of care which a reasonable person would exercise in a like situation. (*People v. Carlton* (1975), 26 Ill. App. 3d 995, 326 N.E.2d 100.) We do not believe that the jury abandoned the domain of allowable inferences or entered the area of speculation in determining that defendant's conduct in shooting his uncle was reckless and constituted involuntary manslaughter. *Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 248, 357 N.E.2d 530.

Defendant next argues that certain cross-examination and rebuttal evidence was improper, prejudicial, and denied defendant a fair trial.

On cross-examination by the State's Attorney, Edward Chew, defendant's brother, was asked to describe the defendant's emotional condition around 6:30 on the evening of the shooting, which was the last time Edward saw defendant. The defense objected on the ground that the question was beyond the scope of direct examination. The State made an offer of proof that the witness would testify that defendant was told by the witness to leave the house because he was disrespectful to his mother

and that defendant upon leaving his mother's house said that he would "kill you bunch of [obscenity]." The State stated that its theory of the case was that defendant left his mother's to get the gun from Nelson Chew and that Nelson Chew attempted to stop him. The court sustained the defense objection. Later when the defendant was cross-examined he was asked if, in the presence of his mother, his brother and his brother's family, he had said that he would "kill a bunch of you [obscenity]." Defendant denied making the statement.

Anticipating the question defense counsel had in a side bar previously objected to this line of questioning on the grounds that it was hearsay, irrelevant and immaterial to the events which took place in another location some four hours later, especially in view of the fact that Nelson Chew was not one of those present to whom the threat was allegedly made. The defense objection was overruled.

When called as a rebuttal witness Edward Chew testified that he heard the defendant make that statement. No objection was made by defendant.

■■■ We do not believe that the statement was hearsay, irrelevant or immaterial. On the contrary, we believe defendant's statement constituted an admission. (*People v. Clark* (1975), 32 Ill. App. 3d 926, 337 N.E.2d 291; Fed. R. Ev. 801(d)(2)(A); E. Cleary, Handbook of Illinois Evidence § 17.11, at 280 (2d ed. 1963).) Defendant's conduct prior to his coming to his uncle's house was relevant to prove the material issue of his state of mind on the evening in question and was therefore a proper subject of examination. (*People v. Harris* (1956), 8 Ill. 2d 431, 436, 134 N.E.2d 315). The rebuttal testimony of Edward Chew was not objected to at trial. Therefore, the defendant cannot now complain that it was improper.

■■ Finally, defendant argues that his sentence is excessive. The penalty for involuntary manslaughter, a Class 3 felony, is set by statute (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(4) and 1005—8—1(c)(4)) as from one to 10 years at the discretion of the court.

In this case the same court presided at trial and at the hearing in aggravation and mitigation and is therefore in a superior position to assess penalty. The reviewing court will not disturb a sentence unless it is greatly at variance with the purpose and spirit of the law or greatly disproportionate to the nature of the crime. (*People v. Wright* (1974), 56 Ill. 2d 523, 536, 309 N.E.2d 111, 114.) We do not feel the court below abused its discretion in sentencing defendant to three to nine years.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.