THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RAUL AGUILAR, JR., Defendant-Appellee.

Third District   No. 3—93—0777

Opinion filed July 15, 1994.

106

McCUSKEY, J., dissenting.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Raymond R. Nolasco, of Aplington, Kaufman, McClintock, Steele & Barry, Ltd., of La Salle (Thomas L. McClintock, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Raul Aguilar, Jr., was indicted on a charge of cannabis trafficking. Following a hearing on certain pretrial matters, the trial judge conducted an inquiry into whether the State intended to offer into evidence any statements made by the defendant. A dispute arose over the admissibility of certain statements made by the defendant at the scene of his arrest and also a formal statement the defendant made to the officers. The trial judge ruled that those statements constituted inadmissible hearsay. The State filed a timely notice of appeal, indicating substantive impairment of its ability to prosecute.

The defendant's arrest for the instant offense occurred after he was stopped for speeding on Interstate 80 by Trooper Daniel Gillette of the Illinois State Police. Gillette observed the defendant's truck, with Texas license plates, travelling six miles per hour over the speed limit. Gillette pulled the defendant over and asked for his driver's license, log book, and bill of lading. The defendant did not have a bill of lading because his truck was empty. Gillette asked the defendant to bring the log book to Gillette's squad car. Gillette was suspicious after his initial conversation with the defendant because the defendant was travelling to Joliet with an empty truck after dropping off a load of onions in Kansas City. Gillette believed that it was strange for an owner/operator to be travelling that distance without freight or cargo, because an owner/operator does not make money when he is travelling empty. The defendant informed Gillette that he owned the tractor part of the truck, but not the trailer. He had leased the trailer for two trips. According to Gillette, the defendant was not nervous and was not being evasive. The defendant's log book was consistent with his story that he dropped off a load of onions in Kansas City.

Gillette's suspicions were further aroused when the defendant did not have much information about the load he was supposedly picking up in Chicago. The defendant was supposed to place a phone call when he reached Joliet in order to find out his exact destination.

Gillette was also suspicious because the defendant was coming from south Texas, a known origin for drugs. Gillette then engaged the defendant in a conversation about drugs. The defendant told Gillette that large amounts of drugs were shipped from Starr County, Texas. Gillette then asked the defendant if he was carrying drugs, and the defendant responded "no." Gillette then asked the defendant if he would consent to a search of the truck. The defendant agreed and signed his name to the consent form.

Initially, Gillette looked into the trailer and confirmed that it was empty, except for three stacks of pallets. Then Gillette measured the inside and outside walls of the trailer. The defendant helped him take these measurements. The defendant and Gillette agreed that something was wrong with the measurement of the front wall of the trailer. They concluded that it was too thick. The defendant then helped Gillette move the pallets and take another measurement. They also counted the rivets in the walls. A drug-sniffing dog was then allowed into the trailer, and the dog alerted for the presence of drugs behind the front wall. A false compartment was located behind the wall, and a number of tin boxes were removed. The police also seized $531 from the defendant. The defendant told Gillette that he did not know there were drugs behind the wall.

The above testimony was adduced at the hearing on the defendant's motion to suppress evidence. At the close of that hearing, the trial judge asked if the State intended to produce any admissions or confessions. The State informed the court that the defendant denied knowledge of everything.

Prior to trial, a disagreement arose concerning the admissibility of a formal statement defendant gave to Officers Rodney Strack and Rodney Damron. This statement was contained in a report made by Damron. The defendant again denied any knowledge that there was cannabis in the truck. According to Damron's report, Aguilar told him that he rented the trailer approximately two weeks before his arrest from Jose Barron of Weslaco, Texas. Aguilar met Barron at a truck stop in Pharr, Texas. Barron offered the defendant a trailer to rent for a trip to Joplin, Missouri. The defendant was to pay Barron $200 for the use of the trailer after the defendant completed his trip. Barron gave the defendant a pager number that he could use to contact Barron. The defendant took a load of produce to Joplin, then picked up a load in Wichita, Kansas, took it to Laredo, Texas, and then went home for a day. The defendant then contacted Barron and asked if he could use the trailer to haul a load to Kansas City, Kansas. Barron told him he could do so for a fee of $100. Barron then offered the defendant $2,000 to haul a load from Chicago to Texas. Barron

told the defendant to page him from the Joliet area to receive further instructions on where to pick up the load that he was to haul to Texas. The defendant delivered a load of onions to the Robinson Potato Supply Company in Kansas City, Kansas, and then paged Barron. He informed Barron that he was on his way to Joliet. On the way to Joliet, the defendant was stopped by the police.

The trial judge ruled that the defendant's statement was hearsay. The trial judge believed that only admissions by a defendant are admissible and that any statements that are not admissions are inadmissible hearsay. The trial judge found that the defendant's statement was exculpatory and was not "an admission that he committed a crime or an admission of the [*sic*] element of the offense." The trial judge ruled that only defendant's statement that he came from Kansas was an admission because crossing State lines is an element of the offense of cannabis trafficking. This ruling applied to the defendant's formal statement and also the statements that he made to Gillette during the traffic stop. The State filed a notice of appeal from this pretrial ruling, citing substantial impairment of the State's ability to prosecute.

●1 In this case, we apply the *de novo* standard of review. Ordinarily, the question of admissibility of evidence is within the sound discretion of the trial judge and will not be overturned unless a clear abuse of discretion is shown. (*People v. Brown* (1990), 199 Ill. App. 3d 860, 557 N.E.2d 611.) However, it has also been stated that, although a trial court's ruling on a motion to suppress evidence will not be disturbed on appeal unless it is manifestly erroneous, where neither the facts nor the credibility of witnesses is in dispute, the question is a legal one subject to *de novo* consideration on review. (*People v. Wehde* (1991), 210 Ill. App. 3d 56, 568 N.E.2d 910; *People v. Mourecek* (1991), 208 Ill. App. 3d 87, 566 N.E.2d 841.) Although the trial court's decision not to allow the defendant's statement into evidence did not arise from a motion to suppress, the same principle should apply. The trial judge's decision was based on his interpretation of the admissions exception to the rule against hearsay. This case involves a legal issue and did not require the trial court to use its discretion regarding fact-finding or assessing the credibility of witnesses. Consequently, this is an issue we can review anew, without affording the trial court's decision any deference.

The parties to this appeal agree that the defendant's statements were entirely exculpatory. The trial court found that, because the defendant's statements were exculpatory, they could not qualify as admissions. The trial judge's view of the law was that any statement by a defendant that did not qualify as an "admission" was inadmissi-

ble hearsay. The trial judge believed that an admission was an admission of guilt or of an element of the offense and that an exculpatory statement could not be an admission. The trial judge concluded the defendant's statements in this case were inadmissible hearsay. We disagree with the trial court's analysis.

●2 The hearsay rule is not a basis for objection when the defendant's own statements are offered against the defendant; in such a case, the defendant's statements are termed "admissions." (*People v. Wilson* (1981), 92 Ill. App. 3d 370, 415 N.E.2d 1315.) Any statement by an accused person, unless excluded by the privilege against self-incrimination or other exclusionary rules, may be used against him as an admission. (*People v. Clay* (1990), 211 Ill. App. 3d 291, 570 N.E.2d 335; *People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) Illinois courts have relied on Federal Rule of Evidence 801(d)(2) in finding that a defendant's admissions are not excludable as hearsay. (See *People v. Simpson* (1977), 68 Ill. 2d 276, 369 N.E.2d 1248; *Wilson*, 92 Ill. App. 3d 370, 415 N.E.2d 1315; *People v. Chew* (1977), 45 Ill. App. 3d 1024, 360 N.E.2d 417.) That rule provides that admissions by party-opponents are not hearsay:

"(d) Statements which are not hearsay. A statement is not hearsay if—
    ***
    (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity[.]" (Fed. R. Evid. 801(d).)

Thus, this rule comports with the statement often found in Illinois cases such as *Clay* and *Howell* that any and every statement by an accused person may be used against that person as an admission unless excluded by other evidentiary bars, and the trial judge was incorrect in finding that the statement must be an admission of guilt or of an element of the crime.

●3 The trial judge apparently believed that any statement by an accused person that was not inculpatory or against interest is hearsay. The court might have been confusing the admissions exception to the hearsay rule with the exception for declarations against interest. There is no requirement that an admission be inculpatory or against interest when made or when offered, because the theory of the admissions exception is based upon the view that the admissibility of a party's own statement is a product of the adversary system. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.1, at 669-70 (6th ed. 1994); E. Cleary, McCormick on Evidence § 262, at 629-30 (2d ed. 1972); see also *United States v. Barletta* (1st Cir. 1981), 652 F.2d 218, 219 ("[T]he court's reliance on a

finding that the defendant's statements are exculpatory rather than inculpatory is, as the defendant apparently concedes on appeal, rendered erroneous by the fact that a statement need not be inculpatory or against interest to be admissible under Rule 801(d)(2)").) Our supreme court relied on Rule 801(d)(2) as recently as 1992 when it noted that a statement may be admissible as an admission against a party, but not when it is offered to support a defendant's own position. See *People v. Pasch* (1992), 152 Ill. 2d 133, 197, 604 N.E.2d 294, 321.

In reaching the conclusion that the defendant's statements in the instant case were inadmissible hearsay, it appears the trial court was confusing two different doctrines. The trial judge referred to the definition of "admission" that often appears in cases such as *People v. Stewart* (1984), 105 Ill. 2d 22, 57, 473 N.E.2d 840, 857, and *People v. Prante* (1986), 147 Ill. App. 3d 1039, 1061-62, 498 N.E.2d 889, 904, that "[a]n admission is a statement or conduct from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow." It is important to understand where this definition of the term "admission" comes from because "admission" has been used in two different contexts. One is the definition that appears in Federal Rule of Evidence 801(d)(2) (Fed. R. Evid. 801(d)(2)) of an "admission by a party opponent" that a statement is not hearsay if it is a party's own statement offered against that party. This comports with the definition already mentioned above that often appears in Illinois cases that any and every statement by an accused person, unless excluded by the privilege against self-incrimination or other exclusionary rules, may be used against him as an admission. See *Clay*, 211 Ill. App. 3d 291, 570 N.E.2d 335; *Prante*, 147 Ill. App. 3d 1039, 498 N.E.2d 889; *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482; *Howell*, 53 Ill. App. 3d 465, 368 N.E.2d 689.

The other definition of admission mentioned above, that "an admission is a statement or conduct from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow," was a doctrine used by courts to distinguish certain statements of defendants that were incriminatory but were not confessions. This was done to avoid the strict admissibility requirements of confessions (*e.g.*, the voluntariness requirement). Originally, when used in this context, the term our supreme court used was "incriminating admissions." (See *People v. Sovetsky* (1926), 323 Ill. 133, 153 N.E. 615; *People v. Kircher* (1923), 309 Ill. 500, 141 N.E. 151.) Later, the word "incriminating" was dropped and just the term "admission" was used. (See *People v. Stanton* (1959), 16 Ill. 2d

459, 158 N.E.2d 47; *People v. Griswold* (1950), 405 Ill. 533, 92 N.E.2d 91.) It is important to note that in all of these cases, the term "admission" was used to distinguish certain statements from confessions. In none of these cases does the court use it in reference to the hearsay rule. Thus, in *Sovetsky* the court held it was error to give a jury instruction on confessions when the accused had only made admissions. (*Sovetsky*, 323 Ill. at 137, 153 N.E. at 616.) In *Kircher* and *Stanton* the court held that the defendant's statements were admissions rather than confessions, thus eliminating certain admissibility requirements of confessions. In *Kircher*, the requirement was the voluntariness requirement (*Kircher*, 309 Ill. at 507-08, 141 N.E. at 154); in *Stanton*, the requirement was a statutory requirement that names and addresses of witnesses to a confession be furnished to the accused (*Stanton*, 16 Ill. 2d at 466-67, 158 N.E.2d at 51). In *Griswold* the court did not say what the objection to the admission of the defendant's statement was, but twice distinguished admissions from confessions. (*Griswold*, 405 Ill. at 541, 92 N.E.2d at 95.) The distinction between the two different uses of the term "admission" can also be seen in McCormick on Evidence (2d ed. 1972). Chapter 26 of that work is entitled "Admissions of a Party-Opponent," and contains the following definition of "admission": "Admissions are the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him." (E. Cleary, McCormick on Evidence § 262, at 628 (2d ed. 1972) (hereinafter McCormick).) Chapter 14 is entitled "Confessions" and contains the following definition of "admission": "An admission, on the other hand, is an acknowledgment of a fact or facts tending to prove guilt which falls short of an acknowledgement of all essential elements of the crime." (McCormick § 144, at 310.) The author noted the distinction between admissions and confessions "has been undertaken primarily by courts seeking to avoid the application of stringent rules governing use of 'confessions' to all statements made by an accused and offered at trial." (McCormick § 144, at 309.) The author cited *Stanton* for this proposition.

The trial judge apparently believed this other definition of the term "admissions" was relevant to a determination of whether or not the statement was hearsay. As demonstrated above, that was not the context in which this other definition arose. This other definition of "admission" does not have much force anymore in the context in which it was originally used. (See 14A Ill. L. & Prac. *Criminal Law* § 361, at 311 (1968) ("The distinction formerly made between "confessions" and "admissions" in Illinois appears to have been largely abrogated by the Escobedo and Miranda decisions").) Never-

theless, this other definition is still used, either alongside the "any and every statement" definition (*Prante*, 147 Ill. App. 3d 1039, 498 N.E.2d 889; *Garcia*, 95 Ill. App. 3d 792, 420 N.E.2d 482) or without it (*Stewart*, 105 Ill. 2d 22, 473 N.E.2d 840; *People v. Lane* (1993), 256 Ill. App. 3d 38, 628 N.E.2d 682; *People v. Muhammad* (1993), 257 Ill. App. 3d 359, 629 N.E.2d 106).

We believe that, to the extent this definition should even still be used, it should be viewed as a requirement of relevance. Evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 568 N.E.2d 864.) "Relevant evidence" is evidence having any tendency to make the existence of a fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. (*Gonzalez*, 142 Ill. 2d 481, 568 N.E.2d 864.) The guilt or innocence of the accused is the issue in a criminal trial. Therefore, saying that an "admission" is a "statement or conduct from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow," seems to be little more than a requirement that the statement be relevant. The definition seems to have been applied in this manner. Thus, in *Muhammad*, the statements were "probative of defendant's identity" (*Muhammad*, 257 Ill. App. 3d at 368, 629 N.E.2d at 113); in *Stewart*, the statement was "relevant to show motive" (*Stewart*, 105 Ill. 2d at 57, 473 N.E.2d at 857); and in *Lane*, "defendant *** failed to show that his statement was not an admission relevant to his guilt or innocence" (*Lane*, 256 Ill. App. 3d at 51, 628 N.E.2d at 691).

•4 Turning at long last to the application of the law to the facts of this case, we find that the court erred in excluding the defendant's statements. The statements were not inadmissible hearsay because they were the defendant's own statements offered against him. (*Wilson*, 92 Ill. App. 3d 370, 415 N.E.2d 1315.) Further, the statements were relevant. "Knowingly" is an element of the relevant offense. (See 720 ILCS 550/5.1 (West 1992).) The defendant's statements as to where he was going and why he was going there are relevant to the issue of whether he knew that he was carrying cannabis in the vehicle. The defendant's strange explanation about his secretive arrangement with Barron regarding the cargo and where it would be picked up, along with the fact that cannabis was found in a hidden compartment in the back of the truck he was driving, could certainly lead to the inference that he knew he was transporting cannabis. Further, the defendant stated that he had been in possession of the trailer for approximately two weeks before his arrest. It can be

inferred from this fact that he had possession and control of the cannabis. Also, it could be inferred from the fact that the defendant was driving from Kansas City to Joliet without a load and was not compensated for his trip that he was on his way to deliver the cannabis.

We note that it has been expressly held that a defendant's exculpatory statements may lead to an inference of guilt. (See *People v. Houseton* (1986), 141 Ill. App. 3d 987, 490 N.E.2d 1354; *People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605.) In *Fulton*, the court held that defendant's statements that he drove the "getaway" vehicle, but knew nothing about the crime, could lead to an inference of guilt. Similarly, in the instant case, the defendant's statements that he was in exclusive possession of the vehicle for two weeks and was driving it to Chicago, but knew nothing about the cannabis, could lead to an inference of guilt.

In sum, the defendant's statements were not excludable under the rule against hearsay, because they were the defendant's own statements offered against him. Further, the statements were relevant to the issues of the defendant's knowledge and possession of the cannabis. For these reasons, the trial court erred in ruling the defendant's statements to be inadmissible. The judgment of the circuit court of La Salle County is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

LYTTON, J., concurs.

JUSTICE McCUSKEY, dissenting:
In my view, the trial court was correct when it excluded the defendant's statements in the case at hand. I cannot agree that a defendant's statement is an "admission" and thus not hearsay merely because it is offered against him. Rather, I believe that a statement is not an admission unless the finder of fact could infer guilt from the statement when considered with the other facts in evidence. According to several Illinois cases, only statements which fall within this definition meet the admissions exception to the hearsay rule. Therefore, I respectfully dissent.

Based upon many cases relying upon Rule 801(d)(2) of the Federal Rules of Evidence, the majority infers that Rule 801(d)(2) should be the law in this State. According to that rule, a defendant's statement is not hearsay when offered against the defendant. However, our

supreme court has never expressly adopted Rule 801(d)(2). The court has addressed this issue on at least three occasions within the past 17 years. (*People v. Pasch* (1992), 152 Ill. 2d 133, 197, 604 N.E.2d 294, 321; *People v. Stewart* (1984), 105 Ill. 2d 22, 56-57, 473 N.E.2d 840, 857, *People v. Simpson* (1977), 68 Ill. 2d 276, 282, 379 N.E.2d 1248, 1252.) Our supreme court has had ample opportunity to adopt Rule 801(d)(2) as the law of this State, yet it has not done so. As a result, I am not persuaded that the principles expressed in that rule govern the result in the case at hand. In my opinion, the following cases articulate the better approach to the admissibility of the defendant's statements in the instant appeal.

In *Stewart*, the defendant told a witness that he was angry at a victim for reporting the defendant to the police. At trial, the trial court allowed the witness to testify to the defendant's statements. Our supreme court held that the statements were admissible. The court in *Stewart* first defined an admission as a statement or conduct from which guilt may be inferred when taken in connection with other facts, but from which guilt does not necessarily follow. The court said the defendant's statements were relevant to show motive for killing the victim and that the jury could have inferred guilt when considered with the other evidence. Based upon this definition and the defendant's statement, the court held that the statement was an admission and thus was not hearsay. *Stewart*, 105 Ill. 2d at 56-57, 473 N.E.2d at 857.

In *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482, the defendant was tried for the death of his infant son. The child died from skull fractures caused by a blunt force to his head. During the investigation, the defendant said that he had fallen asleep on the sofa with the child. When he awoke, the child was on the floor and was not breathing. The defendant gave this version of the events to the attending physician and the police investigator. He signed a written statement containing essentially the same facts. At trial, the State presented testimony that the distance from the sofa to the floor was 15 inches and that a fall of that distance could not have caused the child's severe injuries. In addition, the trial court received the defendant's written statement into evidence. The appellate court said that the trial court had properly admitted the written statement.

Though the appellate court in *Garcia* first said that every statement by an accused may be used against him unless excluded by other evidentiary bars, it did not rely upon this principle in affirming the trial court's decision to admit the written statement. Rather, the *Garcia* court considered the defendant's written statement with all of the other evidence. In light of testimony that a 15-inch fall could not

have caused the child's injuries, the court said that the defendant's statement tended to imply his guilt. Therefore, the written statement was properly admitted. *Garcia*, 95 Ill. App. 3d at 800, 420 N.E.2d at 488.

Finally, in *People v. Lane* (1993), 256 Ill. App. 3d 38, 628 N.E.2d 682, the defendant killed two people and fled to Italy. In exchange for the defendant's extradition, the State agreed with Italian authorities not to seek the death penalty at the defendant's trial. When the extradition process became final, two FBI agents took the defendant into custody in Italy and returned him to Illinois for trial. When the agents assumed custody of him, the defendant made the following statement to the agents: "I've already won because I can't get the death penalty now." (256 Ill. App. 3d at 50.) The trial court allowed one of the agents to testify regarding this statement.

The appellate court in *Lane* held that the statement was properly admitted. The court relied upon *Stewart* for the definition of "admission." The court then said that admissions are not objectionable under the rule against hearsay. In finding that the defendant's statement was properly admitted as an admission, the court said the statement tended to imply the defendant's guilt. *Lane*, 256 Ill. App. 3d at 50-51, 628 N.E.2d at 690-91.

Based upon the principles and reasoning contained in *Stewart*, *Garcia* and *Lane*, I believe that the proper test of whether a defendant's statement constitutes inadmissible hearsay is the evaluation of the statement in conjunction with the other facts in evidence. If the finder of fact could not infer guilt from the statement when considered with the other evidence, the statement is *not* an admission and thus is inadmissible hearsay. The only statements which are not hearsay are statements which meet the definition of "admission" expressed above. In my view, the trial court stated and applied the correct rule of law when it excluded the defendant's statements as hearsay.

The final question is whether the trial court abused its discretion. Evidentiary rulings are within the trial court's sound discretion and will not be reversed absent an abuse of discretion. (See *People v. Kidd* (1992), 147 Ill. 2d 510, 535, 591 N.E.2d 431, 442-43.) Based on the facts contained in the record, I conclude that the trial court correctly determined that the statements were not admissions. I agree with the trial judge that a finder of fact could *not* have inferred guilt from the defendant's statements in the instant case when those statements were considered with the other evidence in the case. Consequently, I find no showing on review that the trial court abused its discretion.

For the reasons indicated, I believe that the trial court applied the correct rule of law to the facts of the case at hand. In my view, the statements at issue did not constitute admissions and were therefore inadmissible hearsay. As a result, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.