FIRST DIVISION 
 May 19, 1997

No. 1-95-2898

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County
 )
v. )
 )
CEDRIC GRISSET, ) Honorable
 ) John Brady,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE O'BRIEN delivered the opinion of the court:
 Following a jury trial, defendant, Cedric Grisset, was found
guilty of first-degree murder and sentenced to 50 years in prison.
On appeal, defendant contends: (1) the trial court erred in
refusing to allow the testimony of Detective Luera concerning the
statement defendant made to the detective shortly after his arrest;
(2) the trial court erred by refusing to give an instruction on
second-degree murder based on provocation; (3) the trial court
erred in refusing to preclude his court-reported statement; (4) the
trial court unduly restricted the direct examination of defendant;
(5) the trial court unduly restricted the cross-examination of the
assistant State's Attorney; (6) the State made prejudicial comments
during closing argument; (7) the trial court denied him his
constitutional rights of due process and equal protection when it
sentenced a similarly situated codefendant to a substantially
lesser period of incarceration; (8) the trial court abused its
discretion by sentencing him to 50 years in prison; and (9) the
State did not prove him guilty beyond a reasonable doubt. We
affirm.
 At trial, Essie Gray testified that around 10 p.m. on
September 14, 1993, she was sitting in her car, which was parked on
May Street between 101st and 102nd Streets. She had driven her
brother, Kenneth, to that location so he could retrieve a telephone
number from a relative's car. As Kenneth walked towards Essie's
car, a second car drove up and parked behind Essie's car. Essie
recognized the driver of that car as codefendant Debra Dalloz, and
she saw a black man, later determined to be defendant, in the
passenger seat. 
 Essie testified she heard Dalloz say "there he is, there
Westside is." "Westside" was Kenneth's nickname. Defendant exited
the vehicle and approached Kenneth. The two men stood about one to
two feet apart and spoke for approximately five minutes. 
 Essie testified Kenneth backed up a little bit, and then
defendant pulled a gun and started shooting. Kenneth had nothing
in his hands when defendant shot him. Defendant then entered the
passenger seat of the car in which he had arrived, and the car
drove north on May Street. 
 Essie testified Kenneth ran toward a backyard between two
houses. Essie ran after Kenneth. When Kenneth got to the
backyard, he told Essie he had been shot, and he fell to the
ground. Essie called the police and told them the offender's car
was a blue Horizon. She also described the driver as a 200-pound
white lady with blonde hair and a pale complexion. At
approximately 7 a.m. the next morning, Essie viewed a lineup at
Area Two police headquarters and identified Dalloz as the driver of
the car. Detective Frank Luera testified that Essie was unable to
identify defendant in a lineup.
 Officer George Vanderschoot testified that, at approximately
10:20 p.m. on September 14, 1993, he received a call of a man shot
at 10140 South May. When he arrived at the scene, Vanderschoot
found Kenneth Gray lying dead on the ground between two buildings. 
Vanderschoot did not observe any weapons on Kenneth, nor were any
weapons recovered from the crime scene. Vanderschoot spoke with
Essie Gray, who described the offenders. Vanderschoot then
broadcast the description to other police personnel.
 Sergeant James Glynn testified that, at approximately 10:17
p.m. on September 14, 1993, he monitored a call of a man shot. 
Shortly thereafter, he monitored another message describing two
offenders who were wanted for the shooting. Glynn began proceeding
to 118th and Morgan, where, the message indicated, the vehicle was
headed. 
 Glynn testified that, at approximately 115th and Morgan, he
saw the wanted offenders and vehicle proceeding north on Morgan. 
Glynn made a U-turn and began following them. Glynn broadcast the
location and direction of the vehicle. At approximately 115th and
Carpenter, several police cars converged on the area and the
officers arrested the individuals inside the vehicle. At that
time, one of the officers on the scene showed Glynn the butt of a
gun sticking out from behind the console on the passenger side of
the vehicle. The officers secured the vehicle until the crime lab
arrived.
 Joseph Thibault, a criminalist with the Chicago police crime
laboratory, testified defendant's right palm and left palm
testified positive for gunshot residue. Dalloz's left palm also
tested positive for gunshot residue. Thibault testified that a
person can acquire gunshot residue in three ways: by firing a gun,
handling a gun, or being in close proximity to a discharged weapon.
 Assistant State's Attorney Peggy Chiampas testified she spoke
with defendant on September 15, 1993, in a conference room at Area
Two police headquarters. Also present were Detective Luera and a
court reporter who took down defendant's statement. Defendant told
Chiampas that, at about 10 p.m. on September 14, 1993, he was at
his grandmother's house when Dalloz came by. Dalloz told him that
Kenneth had hit her in the face with a book because Kenneth was
upset that she was going to have a drink with another man. Dalloz
also told defendant she wanted to kill Kenneth, and she asked
defendant to get her a gun or a knife.
 Defendant told Chiampas that he grabbed a loaded gun and went
outside to a blue four-door Plymouth. Dalloz entered the driver's
seat, and defendant entered the passenger seat. Dalloz eventually
drove to 101st and May, where she saw Kenneth. Dalloz told
defendant to get out of the car. Defendant pulled the gun out of
his pocket, walked up to Kenneth, and started shooting at him. 
Kenneth ran away, and defendant jumped in the car and Dalloz drove
them away from the crime scene.
 Defendant told Chiampas that Dalloz thanked him, drove to the
Hollywood liquor store, and bought him some beer. Then they drove
to the middle of his grandmother's block, where he took the shells
out of the gun and put them in the sewer. Defendant put the gun in
the ash tray of the car, and the police later stopped them. 
 Defendant's testimony at trial mirrored his court-reported
statement to Chiampas except for one crucial difference: at trial,
defendant claimed he shot Kenneth because he saw a "chrome object"
in Kenneth's hand. Defendant also testified he related that
information to Chiampas and Detective Luera prior to the court-
reporter taking down his statement. However, Chiampas testified
that defendant never told her he had seen anything in Kenneth's
hand. Detective Luera never testified about whether defendant
stated he had seen an object in Kenneth's hands prior to the
shooting. 
 The jury found defendant guilty of first-degree murder, and
the trial court sentenced him to 50 years in prison. Defendant
filed this timely appeal.
 First, defendant argues the trial court erred by refusing to
allow Detective Luera to testify that defendant told him and
Assistant State's Attorney Chiampas that he had seen "something" in
Kenneth's hands prior to the shooting. Defendant contends
Detective Luera's testimony was admissible to impeach defendant's
court-reported statement, in which he failed to mention seeing an
object in Kenneth's hands prior to shooting him. Defendant also
contends Detective Luera's testimony was admissible to impeach
Chiampas' testimony that defendant never mentioned seeing anything
in Kenneth's hand.
 We disagree. The trial court permitted defendant to testify
he had seen a chrome object in Kenneth's hands prior to the
shooting. Thus, Detective Luera's testimony would have been about
a prior statement made by defendant, that he had seen "something"
in Kenneth's hand, which was consistent with his trial testimony. 
Proof of such a prior consistent statement generally is
inadmissible as hearsay. People v. Henderson, 142 Ill. 2d 258, 310
(1990).
 Defendant argues, though, that the State claimed he had
recently fabricated his trial testimony that he had seen a chrome
object in Kenneth's hand prior to shooting him. Therefore, the
trial court should have allowed his prior consistent statement to
Detective Luera. In People v. Emerson, 97 Ill. 2d 487, 501 (1983),
People v. Ashford, 121 Ill. 2d 55, 71 (1988), People v. Gacho, 122
Ill. 2d 221, 250 (1988), People v. Harris, 123 Ill. 2d 113, 139
(1988), and People v. Henderson, 142 Ill. 2d 258, 310 (1990), our
supreme court held that when it is charged that the witness
recently fabricated his testimony or has a motive to testify
falsely, proof that he gave a similar account before the motive
existed or before the effect of the account could be foreseen is
admissible. Thus, under Emerson, Ashford, Gacho, Harris, and
Henderson, defendant's statement to Detective Luera was admissible
only if he made that statement before he had the motive to testify
falsely.
 However, in People v. Williams, 147 Ill. 2d 173, 227 (1991),
the supreme court held "prior consistent statements are admissible
to rebut a charge or an inference that the witness is motivated to
testify falsely or that his testimony is of recent fabrication, and
such evidence is admissible to show that he told the same story
before the motive came into existence or before the time of the
alleged fabrication." (Emphasis added.) In People v. Antczak, 251
Ill. App. 3d 709 (1993), the appellate court construed Williams to
mean that when a witness is charged with recently fabricating his
testimony at trial, prior consistent statements are admissible
regardless of whether the motive to testify falsely existed at the
time the witness made those prior consistent statements. In
effect, Anctzak held that the supreme court in Williams overruled
its decisions in Emerson, Ashford, Gacho, Harris, and Henderson
that prior consistent statements are admissible to rebut a claim of
recent fabrication only if those prior statements were made before
the motive to testify falsely arose. 
 However, a careful examination of Williams reveals that, in
analyzing the issue as to whether the trial court erred by
admitting a witness' prior consistent statement into evidence, the
Williams court considered whether the witness had the same motive
to fabricate at the time she made the prior consistent statement as
she did at trial. Further, in its analysis of the issue, the
Williams court cited with approval both Harris and Emerson, as well
as two other cases, People v. Clark, 52 Ill. 2d 374 (1972), and
People v. Titone, 115 Ill. 2d 413 (1986), in which the court
considered whether the motive for fabrication existed at the time
of the witness' prior consistent statements. Finally, we note
that subsequent to Williams, the supreme court in People v.
Patterson, 154 Ill. 2d 414, 453 (1992), cited Emerson with approval
and held that a witness' prior consistent statements were
inadmissible because the motive to fabricate existed at the time
the statements were made. Therefore, we conclude that Emerson,
Ashford, Gacho, Harris, and Henderson are still good law. 
Accordingly, defendant's prior consistent statement to Detective
Luera was admissible to rebut the charge of recent fabrication only
if the motive to fabricate did not exist at the time he made that
statement. 
 Defendant made his statement to Detective Luera, that he had
shot Kenneth because he saw "something" in Kenneth's hands, after
being arrested by the police who had also recovered the gun from
his car. Thus, defendant had a motive to fabricate when he spoke
with Detective Luera, and therefore defendant's statement was not
admissible at trial.
 Defendant makes several more arguments in support of his
contention that the trial court erred in refusing to allow
Detective Luera's testimony about defendant's statement that he saw
something in Kenneth's hands prior to shooting him. First,
defendant argues that his court-reported statement, in which he
failed to mention seeing anything in Kenneth's hands, was
inconsistent with his trial testimony that he had seen a chrome
object in Kenneth's hands prior to the shooting. Therefore, the
trial court should have allowed in his statement to Detective Luera
in order to rehabilitate him. Where a witness has been impeached
by means of a prior inconsistent statement, he may bring out all
prior statements if they explain or disprove the making of the
inconsistent statement. People v. Williams, 147 Ill. 2d at 227.
 Here, defendant's court-reported statement was admitted not
merely for impeachment purposes, but as substantive evidence. 
Therefore, Williams is factually inapposite. Further, even if
Williams did apply here, defendant's prior statement to Detective
Luera is not admissible because it does not explain why his court-
reported statement failed to include an account of the object in
Kenneth's hands, nor does the statement to Detective Luera disprove
the court-reported statement.
 Second, defendant argues the trial court should have admitted
his statement to Detective Luera in order to prevent the jury from
receiving a "misleading impression" about the court-reported
statement. We reject this argument. During the court-reported
statement, defendant was asked open-ended questions that allowed
him to explain fully the circumstances surrounding his shooting of
Kenneth. The entire statement was admitted into evidence. The
jury was not "misled" in any way.
 Third, defendant contends a prior consistent statement may be
admitted where substantial doubt is raised as to whether the
impeaching statement was actually made. See People v. Rodriguez,
58 Ill. App. 3d 562, 569 (1978). As discussed above, defendant's
court-reported statement was admitted not merely for impeachment,
but as substantive evidence. Further, there is no doubt defendant
made the court-reported statement. Accordingly, Rodriguez does not
apply here.
 Fourth, defendant argues the compulsory process clause of the
sixth amendment grants a defendant the right to call witnesses in
his favor and, therefore, the trial court erred when it refused to
permit the testimony of Detective Luera. In support, defendant
cites Rock v. Arkansas, 483 U.S. 44, 97 L. Ed. 2d 37, 107 S. Ct.
2704 (1987). In Rock, the United States Supreme Court held that a
per se rule excluding all hypnotically refreshed testimony
impermissibly infringed on a criminal defendant's right to call
witnesses in his favor and, thus, violated the compulsory process
clause. Clearly, Rock is factually inapposite to the present case.
 A case more directly on point is Chambers v. Mississippi, 410
U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), which was cited
in Rock v. Arkansas. In Chambers, the Court held the trial court
abridged defendant's right to present witnesses in his own defense
by excluding hearsay testimony that bore "persuasive assurances of
trustworthiness" and was critical to the accused's defense.
Chambers, 410 U.S. at 302, 35 L. Ed. 2d at 313, 93 S. Ct. at 1049. 
Chambers set forth four factors to help determine the reliability
of a hearsay statement: (1) the statement was made spontaneously
to a close acquaintance shortly after the occurrence of the crime;
(2) the statement was corroborated by other evidence; (3) the
statement was self-incriminating and against the interests of the
declarant; and (4) adequate opportunity existed for cross-
examination of the declarant. Chambers, 410 U.S. at 300-01, 35 L.
Ed. 2d at 311-12, 93 S. Ct. at 1048-49. See also People v. Thomas,
171 Ill. 2d 207, 216 (1996). 
 With regard to the first Chambers factor, defendant's
statement that he saw something in Kenneth's hand was made to
Detective Luera, not a close acquaintance. As for the second
factor, defendant's statement was corroborated only by his own
testimony, not by the witness to the crime or his court-reported
statement. With respect to the third factor, defendant's statement
offered a potential justification for the shooting and, thus, was
self-serving, not self-incriminating. Finally, as to the fourth
factor, an adequate opportunity existed for cross-examination of
defendant regarding the statement. 
 Under these facts, we cannot say defendant's hearsay statement
was so trustworthy that the trial court abused its discretion by
denying its admission. 
 Moreover, even if the trial court did err in refusing to admit
defendant's prior consistent statement to Detective Luera, we would
not reverse the trial court given the overwhelming evidence against
defendant. See our discussion of defendant's reasonable doubt
argument, infra. 
 Next, defendant contends the trial court erred when it refused
to give an instruction on second-degree murder based on
provocation. Defendant was entitled to that instruction if some
evidence of serious provocation existed in the record which, if
believed by the jury, would reduce the crime to second-degree
murder. People v. Delgado, 282 Ill. App. 3d 851, 857 (1996). 
 The second-degree murder statute states in relevant part:
 "(a) A person commits the offense of second degree
 murder when he commits the offense of first degree murder
 *** and ***
 (1) At the time of the killing he is acting under a
 sudden and intense passion resulting from serious
 provocation by the individual killed ***[.]
 ***
 (b) Serious provocation is conduct sufficient to
 excite an intense passion in a reasonable person." 720
 ILCS 5/9-2 (West 1992).
 Mutual quarrel or combat is one of the recognized forms of
serious provocation sufficient to reduce first-degree murder to
second-degree murder. People v. Garcia, 165 Ill. 2d 409, 429
(1995). Defendant contends there was evidence presented at trial
that a mutual quarrel took place prior to the shooting and,
therefore, the trial court should have given the provocation
instruction.
 We disagree. The trial testimony established only that
defendant and Kenneth exchanged heated words prior to the shooting.
However, "[w]ords, in and of themselves, no matter how vile, can
never constitute serious provocation such that second degree murder
should be found instead of first degree murder. [Citation.] 
Rather, the words *** must be accompanied by mutual combat so
serious that it mitigates against finding the defendant guilty of
first degree murder." Garcia, 165 Ill. 2d at 429-30. 
 Defendant points to his testimony that he shot Kenneth in
self-defense after seeing a chrome object in his hands as evidence
of such mutual combat. However, mutual combat does not constitute
a fight in which one of the parties acts in self-defense. Delgado,
282 Ill. App. 3d at 857-59. Accordingly, the trial court properly
refused to give the provocation instruction.
 Next, defendant argues the trial court erred by denying his
request to bar the State from using his court-reported statement
based on his contention that it was inadmissible hearsay. We note
that defendant does not contend his statement was involuntarily
given. 
 We find no error. "[O]ut-of-court admissions and confessions
of a party's opponent in civil and criminal cases are a principal
exception to the hearsay rule ***." People v. Bryant, 36 Ill. App.
3d 298, 300 (1976). 
 Defendant argues, though, that the confrontation clause of the
sixth amendment bars a hearsay statement unless it bears "adequate
indicia of reliability". Ohio v. Roberts, 448 U.S. 56, 66, 65 L.
Ed. 2d 5970, 608, 100 S. Ct. 2531, 2539 (1980); Idaho v. Wright,
497 U.S. 805, 815, 111 L. Ed. 2d 638, 652, 110 S. Ct. 3139, 3146
(1990). Defendant contends his court-reported statement lacks such
reliability, mainly because it conflicts with other evidence, and
therefore the court should have refused to admit it at trial. 
 We disagree. The reliability of a hearsay statement can be
inferred in a case where the evidence falls within a firmly rooted
hearsay exception that rests "upon such solid foundations that
admission of virtually any evidence within them comports with the
'substance of the constitutional protection'". Ohio v. Roberts,
448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539, quoting
Mattox v. United States, 156 U.S. 237, 244, 39 L. Ed. 409, 411, 15
S. Ct. 337, 340 (1895). The hearsay exception for a criminal
defendant's voluntary confession is firmly rooted in the law and
comports with the substance of the constitutional protection. See
People v. Schwartz, 3 Ill. 2d 520, 522 (1954) ("It is elementary
that extrajudicial confessions *** are competent evidence, as an
exception to the hearsay rule, *** when they are voluntarily and
understandingly made. Although they are hearsay, they are
considered reliable because the law presumes that no rational
person would make admissions against his interest unless urged to
do so by the promptings of his conscience to tell the truth, which
invests them with such a high degree of reliability that they can
be taken out of the classification of unreliable hearsay"). Thus,
defendant's voluntary confession contained adequate indicia of
reliability.
 The State contends that a defendant's confession is properly
considered nonhearsay, as opposed to an exception to the hearsay
rule, and therefore no "indicia of reliability" is even required. 
In support, the State cites People v. Aguilar, 265 Ill. App. 3d 105
(1994). In Aguilar, the Appellate Court, Third District, held that
a statement is not hearsay if it is a party's own statement offered
against that party. Aguilar, 265 Ill. App. 3d at 110. In such a
case, the defendant's statement is termed an admission, and it may
be used against him unless excluded by the privilege against self-
incrimination or other exclusionary rules. Aguilar, 265 Ill. App.
3d at 110.
 In People v. Cruz, 162 Ill. 2d 314, 374-75 (1994), though, our
supreme court held that "[r]elevant admissions of a party, *** are
admissible when offered by the opponent as an exception to the
hearsay rule." (Emphasis added.) See also Schwartz, discussed
above, which describes an extrajudicial confession as an exception
to the hearsay rule. Thus, we think defendant's confession here is
better analyzed as an exception to the hearsay rule, as opposed to
nonhearsay. However, we note that under either analysis,
defendant's confession was properly admitted into evidence.
 Next, defendant argues the trial court erred when it sustained
objections to the following questions posed to him on direct
examination: 
 "Q. How long have you lived with your grandmother?
* * * 
 Q. Are you employed now?" 
 In support, defendant cites Cleary & Graham: "The occupation
and related background of the witness are regarded as having value
in determining the credit to be given her testimony and may be
inquired into as a matter of right ***." M. Graham, Cleary &
Graham's Handbook of Illinois Evidence 607.6, at 393 (6th ed.
1994). 
 However, the quoted language from Cleary & Graham is taken
from a section entitled "Components of Credibility: Impeachment." 
Here, defense counsel's questions were not an attempt to impeach
defendant. Moreover, the cases Cleary & Graham cite in support 
hold only that it is proper to cross-examine a witness regarding
his occupation and related background as a matter affecting the
witness' general credibility (see People v. Crane, 302 Ill. 217
(1922)), even though an unlawful or disreputable occupation is
disclosed. See People v. White, 251 Ill. 67 (1911); People v.
Bond, 281 Ill. 490 (1917); People v. Shinkle, 160 Ill. App. 3d 1043
(1987), rev'd, 128 Ill. 2d 480 (1989); People v. Kegley, 227 Ill.
App. 3d 48 (1992); People v. Hines, 94 Ill. App. 3d 1041 (1981);
and People v. Anderson, 48 Ill. 2d 488 (1971). None of those cases
are applicable here, where defendant argues that the trial court
improperly restricted direct examination of him. 
 Defendant contends the restriction of direct examination
violated the compulsory process clause of the sixth amendment. We
disagree. The compulsory process clause does not allow a defendant
to offer irrelevant evidence. People v. Maberry, 193 Ill. App. 3d
250, 263 (1990). The questions complained of here were not
relevant, and the trial court did not abuse its discretion in
sustaining objections to them. Moreover, even if the trial court
did err, we do not see how defendant was prejudiced thereby. 
 Next, defendant argues the trial court erred by unduly
restricting cross-examination of Assistant State's Attorney
Chiampas. The latitude permitted on cross-examination is within
the sound discretion of the trial court. On review, we will not
reverse the trial court's limitation on cross-examination absent an
abuse of discretion resulting in manifest prejudice to the
defendant. People v. Sims, 265 Ill. App. 3d 352, 358 (1994).
 Defendant contends the court erred when it sustained an
objection to the following question: 
 "Q. You've learned from other assistant State's Attorneys
 that you should ask questions of a defendant about how he was
 treated by the police, correct?" 
 We find no abuse of discretion, because the record indicates
Chiampas had previously been asked the same question, and she
testified she asks each individual she interviews about how the
police treated him. See People v. Matthews, 205 Ill. App. 3d 371,
413 (1990) (the trial court has broad discretion to curtail
questioning that it finds unnecessarily repetitive).
 Defendant also contends the court erred by sustaining
objections to the following questions: 
 "Q. You've learned how you should ask questions about
 whether or not a defendant is under the influence of alcohol,
 correct? 
* * * 
 Q. You've also been told at some point that you should
 purposely put mistakes in the statements for a defendant to
 correct?" 
 We find no abuse of discretion, as defendant previously asked
Chiampas whether the State's Attorney office has policies regarding
how to take statements from defendants. Chiampas testified there
were no general policies and that her "job as well as any other
assistant State's Attorney's job was to take the statement of the
defendants down." See Matthews, 205 Ill. App. 3d at 413.
 Finally, defendant contends the trial court erred in
sustaining an objection to the question 
 "Q. Was there a promotion from you or for you to go to the
felony review unit to the felony trial division?" 
 We find no abuse of discretion, as this question was not
relevant. See People v. Khan, 136 Ill. App. 3d 754, 761 (1985)
(the trial court may bar cross-examination seeking irrelevant
information).
 Next, defendant contends the State made improper remarks
during closing argument. A prosecutor is allowed a great deal of
latitude in closing argument and may comment upon the evidence
presented and the reasonable inferences arising therefrom. People
v. Hudson, 157 Ill. 2d 401, 441 (1993). Even if a prosecutor's
closing remarks are improper, they do not constitute reversible
error unless they result in substantial prejudice to the defendant
such that the verdict would have been different absent those
remarks. Hudson, 157 Ill. 2d at 441.
 Defendant waived review of some of the State's remarks by
failing to make objections at trial. Hudson, 157 Ill. 2d at 425. 
We proceed to address only those remarks that defendant objected to
in the trial court.
 First, defendant complains about the State's comment: 
 "[T]he facts you heard from the defendant, from
 Peggy Chiampas [are] that he never told anybody he
 saw anything out there." 
Defendant contends this comment was improper in light of
defendant's statement to Detective Luera that he had seen
"something" in Kenneth's hands prior to shooting him. As discussed
above, though, the trial court properly refused to admit Detective
Luera's testimony. Further, the State's comment was a proper
statement of the evidence presented at trial, since defendant's
court-reported statement contained no mention of any object in
Kenneth's hands, and Chiampas testified that defendant never
mentioned seeing anything in Kenneth's hands prior to shooting him.
 Second, defendant complains about the State's comment: 
 "[T]he defense wants you to believe that a licensed
 attorney [Chiampas], licensed to practice law in
 the state of Illinois came up here and didn't tell
 you the truth." 
Defendant is apparently arguing that the State improperly vouched
for the credibility of a witness. See People v. Spiezio, 191 Ill.
App. 3d 1067, 1075-76 (1989). We find no error here, because the
State's comment was made in response to defense counsel's closing
argument: 
 "[T]estimony *** contained in [defendant's court-
 reported statement] is not the whole truth about
 what went on. Ladies and gentlemen, what was put
 in there was put in there by the State's Attorney,
 the assistant State's Attorney who decided what she
 wanted to put in, plain and simple."
See People v. Collins, 106 Ill. 2d 237, 276-77 (1985); People v.
Williams, 161 Ill. 2d 1, 46 (1994).
 Third, defendant complains about the State's comment: 
 "Miss Chiampas was specifically asked 'did the
 defendant ever tell you about a chrome object in
 the victim's hands.' Answer. 'No. It didn't happen
 like that.'" 
Chiampas testified defendant never told her he had seen anything in
Kenneth's hands. Thus, the State's comment was not error. 
 Fourth, defendant complains about the State's comment: 
 "[I]f the defendant was sitting in that room with a
 State's Attorney and said in response to any of her
 questions or blurted out, 'but the victim had a
 chrome object,' that court reporter would have
 typed that down." 
That comment is an accurate reflection of the evidence, as the
court-reported statement was admitted into evidence, and it
contained no mention of any chrome object.
 Next, defendant argues his 50-year sentence is improperly
disparate to the 30-year sentence imposed on codefendant Debra
Dalloz. Fundamental fairness is not violated simply because one
defendant receives a substantially longer sentence than another. 
People v. Brown, 267 Ill. App. 3d 482, 487 (1994). A disparity in
sentencing can be justified by differences in the nature and degree
of the defendants' participation in the offense or differences in
the codefendants' histories, characters, criminal records,
potential for rehabilitation or relative maturity. Brown, 267 Ill.
App. 3d at 487.
 Here, Debra Dalloz drove defendant to Kenneth and pointed him
out, but only defendant shot Kenneth. Thus, the disparity in
sentences is justified by the difference in the degree of the
codefendants' participation in the shooting. Further, there was
much mitigation evidence presented for Dalloz that was not
presented for defendant. In particular, numerous individuals
testified to Dalloz's good character as a person and as an
employee. Dalloz also informed the trial court that she was sorry
about the shooting. By contrast, during defendant's sentencing, he
refused to take responsibility for his actions and showed no
remorse. Thus, the disparity in sentences is also justified by the
differences in the codefendants' characters, potential for
rehabilitation, and relative maturity. 
 People v. Williams, 228 Ill. App. 3d 981 (1992), and People v.
Fauntleroy, 224 Ill. App. 3d 140 (1991), cited by defendant, do not
compel a different sentencing result. In Williams and Fauntleroy,
the appellate court affirmed codefendants' equal sentences even
though only one of the codefendants actually shot the victim. In
each case, the appellate court held that the codefendants' roles in
the killings were not so different as to require a different
sentence. However, unlike here, in neither Williams nor Fauntleroy
did the appellate court discuss whether the evidence presented
during sentencing established differences in the codefendants'
character, potential for rehabilitation, or relative maturity. 
Thus, neither Williams nor Fauntleroy is helpful to defendant. 
 People v. Clay, 124 Ill. App. 3d 140 (1984), cited by
defendant as a case where the appellate court reduced a defendant's
sentence because it was excessively disparate from the sentence
imposed on a codefendant, is factually inapposite. Neither of the
codefendants in Clay fired the weapon that killed the victim,
whereas here defendant shot the victim while codefendant Dalloz
merely drove defendant to and from the crime scene. 
 Next, defendant argues the trial court abused its discretion
by sentencing him to 50 years in prison. Defendant contends the
trial court failed to give adequate consideration to his
rehabilitative potential, as demonstrated by the fact that it made
no specific findings concerning factors in aggravation or
mitigation. 
 We disagree. The trial court need not recite and assign a
value to each factor in aggravation and mitigation it has
considered. People v. Nussbaum, 251 Ill. App. 3d 779, 781 (1993).
Further, even though the trial court does not expressly state its
consideration of all the mitigating factors, such consideration is
presumed where the mitigating factors were argued before the court. 
People v. Rodriguez, 254 Ill. App. 3d 921, 931 (1993).
 At the sentencing hearing here, defense counsel presented
evidence in mitigation that defendant was neglected as a young
child and had been in and out of foster homes. Defense counsel
also argued that defendant has children and an employment history,
but has "no appreciable criminal history." Defense counsel further
argued that codefendant Dalloz had facilitated the shooting, and
there was little likelihood defendant would repeat such a crime. 
 In aggravation, a victim-impact statement authored by the
victim's sister, Essie Gray, was admitted in evidence. 
 After the presentation of the evidence in mitigation and
aggravation, defendant addressed the court but expressed no remorse
for the killing. The trial court then issued its sentence, stating
that codefendant Dalloz "has a great deal of responsibility in this
case" but that defendant cannot excuse his conduct simply because
Dalloz asked him to kill the victim. The court noted the victim's
family "would not be grieving" if defendant had not grabbed a gun,
looked for the victim in several different places, and then killed
him. The court sentenced defendant to 50 years in prison.
 The weight the trial judge is to accord each factor in
aggravation and mitigation depends on the circumstances of the
case. The balance to be struck among the aggravating and mitigating
factors is a matter of judicial discretion that we will not disturb
on appeal absent an abuse thereof. People v. Dominguez, 255 Ill.
App. 3d 995, 1004 (1994). Defendant's 50-year sentence was within
the statutory guidelines for first-degree murder and was not an
abuse of discretion.
 Finally, defendant contends the State failed to prove him
guilty beyond a reasonable doubt. When presented with a challenge
to the sufficiency of the evidence, the relevant inquiry is
whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. People
v. Collins, 106 Ill. 2d at 261.
 The evidence against defendant was overwhelming. Essie Gray
testified she saw defendant shoot her brother, Kenneth, and that
Kenneth had nothing in his hands at the time. The police who
arrived on the scene found no weapons on Kenneth or in the
vicinity. Further, defendant gave a court-reported statement in
which he admitted killing Kenneth. In that statement, Kenneth
never mentioned seeing anything in Kenneth's hands prior to
shooting him. Viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found
defendant guilty of first-degree murder.
 For the foregoing reasons, we affirm the trial court. As part
of our judgment, we assess defendant $150 as costs for this appeal.
 Affirmed.
 CAHILL, J., and THEIS, J., concur.